UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA         )
                                )
v.                               )          Cr. No.  08-10071-RGS
                                )
BRIMA WURIE                      )
_____)

**DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Wurie is before this Court for resentencing for the distribution of 6.4 grams of crack cocaine (count two of the indictment).  This Court originally sentenced Mr. Wurie to a term of 262 months and five years of supervised release following his convictions on count two, on a charge of possession with intent to distribute 215.8 grams of crack cocaine (count three) and on a charge of being a felon in possession of a firearm and ammunition (count one).  The 262 months was the low end of the then-applicable career offender guideline.

As calculated by probation, the career offender advisory guideline sentencing range now applicable to his conviction on count two is 210-240 months.[1]  For the reasons set out below Mr. Wurie requests that this Court impose a sentence of ten years (120 months) to be followed by a term of five years of supervised release.  He submits that sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing set out in 18 U.S.C.§3553(a)(2).  *See United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

---

[1]  While he has presented challenges to the classification of his prior offenses as career offender predicates, Mr. Wurie recognizes that this Court is bound by the Court of Appeals decisions holding to the contrary and simply seeks to preserve those challenges for possible future appellate review.

Family Background

Mr. Wurie's family background was set out in the sentencing materials filed at the time of his initial sentencing (D.E.80, pp.2-6 and D.E.81) and will not be repeated here. He maintains the support of his family.

The Last Seven and One-Half Years

The course of Mr. Wurie's incarceration in this case demonstrates a slow, deliberate, and stable change from an unmotivated and negative attitude to positive, productive behavior aimed at having a fulfilling life. Mr. Wurie has now been incarcerated in connection with this offense for seven and one-half years, first as a pre-trial detainee and then as sentenced prisoner. He has been in the custody of the Bureau of Prisons (BOP) from August 2011, first at USP Florence in Colorado, then at USP Beaumont in Texas and now at FCI Berlin New Hampshire. He has had no disciplinary reports during the more than three and one-half years of his incarceration following his initial sentencing. *See* PSR p.49. He has taken courses at the three BOP facilities in which he has been incarcerated as well as studying on his own and developing a fitness program which he has taught to other inmates. Since he arrived at Berlin he has been working in the recreation department. He has maintained a relationship with his family and his now seven year old daughter and his fiancée. *See* Letter of Brima Wurie appended as "A"; documents from the BOP appended as "B".

Mr. Wurie's behavior in BOP custody contrasts starkly with his behavior while in prior state custody and in pre-trial detention. As the PSR reports, Mr. Wurie "received approximately a half dozen disciplinary reports" while in the Suffolk County House of Correction between the summer of 2002 and the summer of 2004. PSR at p.18. He also was written up and sanctioned

following verbal confrontations during his participation in the Massachusetts Boot Camp in 2001. He successfully completed that program but according to DOC records displayed a negative attitude and lacked motivation. *Id*. During his pre-trial incarceration in connection with this case, he received several disciplinary reports for conduct in the Plymouth County Correctional Facility and prior to that briefly lost recreational privileges in the Suffolk County House of Correction. PSR. P.34.

His turnaround in BOP custody reflects Mr. Wurie's determination to stop the pattern of his past misconduct and change his future. The PSR prepared in 2011 depicts an unmotivated, sporadically employed person, in and out of custody prior to his arrest in this case. As set out in his letter to the Court, while in BOP custody Mr. Wurie has been developing and working with a physical fitness program. Upon his release he plans to work in that field while he becomes certified as a personal trainer. He also wants to contribute to his community by working with young people in the inner city to keep them from his past lifestyle.

He also has plans for his family life. His daughter, Summer, was six weeks old when he was arrested in this case. Despite the challenges, he has developed and maintained a relationship with her from prison with the help of Yolanda Walker, Summer's mother and Mr. Wurie's fiancée. His first class in BOP custody was a parenting class. He and Yolanda plan on marrying when he is released. *See* letter of Yolonda Walker appended as "C".[2]

This Court can consider post-sentencing rehabilitation at resentencing in determining the sentence sufficient but not greater than necessary to meet the goals of sentencing under 18 U.S.C. §3553(a). *United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000); *Pepper v. United States*, 131 S.Ct. 1229 (2011). Had Mr. Wurie not gone to trial, his career offender guideline

---

[2] Ms. Walker's letter was e-mailed to counsel. A signed letter will be submitted prior to sentencing.

range, with acceptance of responsibility, would have been 151-188 months.  His conduct and efforts to prepare for productive participation in society and the life of his family upon his release while in the BOP demonstrates post-sentencing rehabilitation which can be considered akin to acceptance of responsibility.  We suggest that the 151-188 months range is a more appropriate starting point.

Prior to his incarceration in this case, Mr. Wurie had served terms of approximately seventeen months, twenty five months, and three and one-half years in state custody.  The PSR and his prior conduct show that those incarcerations did not change his actions or motivation. This Court's initial sentence prompted Mr. Wurie to reevaluate himself and make positive changes in both his conduct and his plans for the future.  He is now 35 years old and has demonstrated his determination to change in the only ways he can while incarcerated.  A ten year sentence will be almost three times as long as his longest state sentence.   It both provides sufficient punishment for his offense and an opportunity to successfully rejoin his family and society.  A five year term of supervised release will enable this Court to make sure that Mr. Wurie's transformation is realized outside the prison setting.  Accordingly, Mr. Wurie requests that this Court impose a sentence of 120 months to be followed by five years of supervised release.

Respectfully submitted,
Brima Wurie,
by his attorney

/s/ Judith H. Mizner
Judith H. Mizner
BBO # 350160
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA  02201
(617) 223-8061

4

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on March 13, 2015

<u>*/s/ Judith H. Mizner*</u>

"A"

Brima A. Wurie Jr. #24753-038
Federal Correctional Institution
FCI Berlin
P.O. Box 9000
Berlin, N.H. 03570

March 12, 2015

Honorable Judge Richard G. Stearns,

I'm writing this letter so you can know the history and have an idea of the man that stands before you on the day of his sentencing.

My name is Brima A. Wurie Jr. I'm thirty-five years old and the fourth eldest of five siblings. I have three older sisters and a younger brother. My sisters are Khadi, Nichole and Julie. My younger brother is Brandon. We were all born in Boston. My parents, who have been married for over forty years, are Marilyn Wurie, who migrated to this country from the island of Trinidad and Tobago, and Brima A. Wurie Sr. who migrated from Sierra Leone in Africa.

My parents are hardworking individuals who did their best to provide everything my siblings and I needed and sometimes wanted growing up. They made sure we got a good education by enrolling us into the METCO system that took inner city students to suburban public schools. We went to school in Reading, MA. Except for me, all my siblings moved on to higher education. I did not finish school in Reading and went to South Boston High School. While I did not graduate with my class I did get my high school diploma through the external diploma program in Boston in 1999.

Growing up I had a decent upbringing. Having three older sisters taught me valuable lessons in life, but I did not have a close relationship with my father growing up. It was not a help you with your homework or teach you how to play sports type of relationship. I'm not saying I did not learn from him, because I did, and I learned a lot but it was all from watching and being taught. My father was a man that took care of his family financially and made sure all the bills were paid and we had what we needed, but that was it. As for a hands-on show affection dad, that came only every so often. More often it was discipline with a belt or a hand from my childhood through my early teens. I think that was the kind of discipline my father grew up with in Sierra Leone. I have not talked about how that affected me with anyone, and still can't say exactly how, but I only know that it has. I have not wanted to discuss it with anyone else because I truly have a tremendous respect for my father but it is something that has stayed with me that I feel I should discuss and get some counseling on.

Not having any older male figures to bond with in my household, I bonded with male figures from the neighborhood. I made some bad choices that led me down the wrong path in life. I started getting in trouble with the law in my late teens. My mother always told me that lifestyle wasn't cut out for me and she was right. I knew it but I didn't do anything about it then. I can't change or rectify my past, but I have learned from it and paid a price. Since my

conviction I've realized that I do not want to continue on my old path.  I now realize that I want to be a different kind of person and live a responsible productive life when I am released.

I want to marry my fiancee, Yolonda Walker, the mother of our daughter Summer Lanora Star Wurie who is now seven years old and will be eight on July 16, 2015.  Being a parent is something I take pride in and I look forward to being a father who is there for his daughter.  That's why parenting was one of the first programs in the Bureau of Prisons I took.  The course was really helpful in a lot of ways to help prepare me to be a good father.  I've been incarcerated since Summer was six weeks old.  I love and miss her tremendously and we have the best relationship we can under the circumstances.  Yolonda has been by my side every step of the way during my incarceration.  With Yolonda's help, I talk to Summer frequently each week.  She does well in school and is interested in dance.  She knows I am in prison and wants me to come home.  I want to be in her life on a daily basis.

Up though my early teens I had real hopeful dreams to play professional basketball.  I was always athletic growing up.  I played in neighborhood leagues and won a high school state championship with South Boston High School.  We were among the last teams to play on the parquet floor in the old Boston Garden.  While I was not successful in becoming a professional athlete, I still want to pursue a career in the athletic field.  Since I have been incarcerated in the Federal Bureau of Prisons I have been introduced to fitness on a much higher scale.  I was out of shape personally when I was sent to the BOP and put together my own high intensity interval training program which worked for me and changed my mental attitude as well as my physical fitness.  I work in the recreation department at FCI Berlin.  I started my own fitness class here helping people get into their best physical shape ever and helping them change their diets to healthier ones.  Helping people transition mentally and physically and seeing the satisfaction it brought them, together with the love I have for fitness, inspired me to want to make a career in personal training.  I want to eventually open my own business and to accomplish that goal I will look for work in the physical fitness/training field while I take courses to obtain my personal fitness training certification.  I also plan to take business courses to learn how to operate and own my business.

Knowing what I've seen and done growing up, I also want to work with inner city youths to help prevent them from experiencing the drugs, gangs, violence, and incarceration that I have been involved in; to help give them a better opportunity and a better path to take.  I will look to work with community leaders, community centers and foundations that work in these fields to try to keep others from making the mistakes I made.

I realize that actions speak more than words, and I have taken steps since my federal incarceration to show that I have changed, although my change has come later than it should have.  I had disciplinary issues in my state incarcerations and my pre-trial incarceration.  I have not had any disciplinary reports since I have been in the Bureau of Prisons.  I have been trying to use my time to educate myself and take advantage of available programs to get additional skills.  In addition to the parenting course, I have taken a virtual welding course and two computer courses at USP Beaumont and a creative writing course at Berlin, as well as teaching a physical fitness program at Berlin as part of my work assignment in the recreation department.

I ask you to take this into consideration in re-sentencing me and to give me an opportunity to show you, outside the prison setting, but still under the jurisdiction of the court, that I have, in fact, changed.

Sincerely,

Brima A. Wurie Jr.

```
  BERAA         *      INMATE EDUCATION DATA      *      07-07-2014
  PAGE 001 OF 001 *             TRANSCRIPT        *      10:40:28

  REGISTER NO: 24753-038     NAME..: WURIE                FUNC: PRT
  FORMAT.....: TRANSCRIPT    RSP OF: BER-BERLIN FCI

  -------------------------- EDUCATION INFORMATION --------------------------
  FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
  BER  ESL HAS   ENGLISH PROFICIENT        08-30-2011 0940 CURRENT
  BER  GED HAS   COMPLETED GED OR HS DIPLOMA 06-25-2012 1251 CURRENT

  -------------------------- EDUCATION COURSES --------------------------
  SUB-FACL    DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
  BER         CREATIVE WRITING FCI     10-07-2013  12-02-2013  P   C  P   16
  BMP         VT ADV MICRO COMP1730-2030 CT2 11-26-2012 03-25-2013 P C C  240
  BMP         VTBASIC MICROCOMP 730-1030 CT2 11-26-2012 02-25-2013 P C C  240
  BMP         VT-VIRTUAL WELDING,M-F,12:30PM 07-31-2012 11-26-2012 P C C  240
  FLP CHG     PARENTING BLUE SIDE      10-31-2011  01-09-2012  P   C  P   10
```

```
  G0000     TRANSACTION SUCCESSFULLY COMPLETED
```

# United States Penitentiary

## Florence, Colorado

### Department of Psychology

Has Awarded

# Brima Wurie

This Certificate For Completing

## Freedom From Drugs

Drug Education Program

March 2012

S. Tiphareth
*Drug Treatment Specialist*

"C"

Honorable Richard G. Stearns
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA  02210

March 13, 2013

Dear Judge Stearns:

My name is Yolonda Walker. I have been an early childhood educator for seventeen years. I am the mother of Brima Wurie's seven year old daughter Summer Wurie. I met Brima in 2006 and we immediately had a strong connection and started dating. Our first date was at my church Kingdom Builders Worship Center. My grandmother suggested that if he didn't agree to attend church, then he wasn't for me and he passed that first test. After several dates we realized that we didn't want to be apart and have been inseparable since. During our time together,  Brima played a major role in assisting me with my son who was about six or seven at the time. My son was awarded a scholarship to the Cambridge Friends School and Brima took on the responsibility to drive him to and from school every day as well as summer camp. They spent a significant amount of quality time bonding together and I really appreciated him for that. The bond that was built is still very strong after Brima's years of incarceration.

Both children have suffered tremendously due to Brima's absence and will benefit immensely when he returns to our family unit. Thankfully we have been able to continue a strong connection these past years with Brima and the children.  They discuss him every day and have hope for our family to gain some normalcy upon Brima's arrival. At twelve years old my son explained to me that he wished he had someone to look up to and Brima is well aware of those desires. Summer writes about her dad a lot and creates artwork of her vision of what our family is supposed to look like. She shares her desire to have her dad in her life every day and remains hopeful that he will be able to pick her up from school and see her perform on stage during school concerts. Summer is a second grade scholar at Mission Grammar school. Summer was six weeks old when Brima was incarcerated.  Fortunately I have managed to keep her strongly connected to her father more than imaginable, due to the circumstances. She talks about buying rings for us to get married and how she wants a baby sister and what her sister's name will be. Within a week of Brima coming home we have plans to make her dream come true about us being married.

Brima Wurie has made mistakes in his life but is a very intelligent man, intelligent enough to use these years of being incarcerated to his advantage. He has gained so much wisdom by reading and self-teaching. I am very proud of what these past years have developed him into. Now he is wise enough to be the husband and father that he was supposed to be seven years ago. Although we have lost so many important years, I strongly believe that it was worth his incarceration because my children and I will benefit from his wisdom and maturity, so they can have someone to look up to and respect. I honestly believe that the position he was put in due to being incarcerated has allowed him to find his destiny as a US citizen. He has a very passionate

plan that will not only benefit the change in his family but also change the lives of others. I know that he will put forth every effort to prove himself to this court, our society, and his family.

Sincerely,


Yolonda Walker