# United States Court of Appeals
## For the First Circuit

No. 15-1395

UNITED STATES OF AMERICA,

Appellee,

v.

BRIMA WURIE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Judith H. Mizner, Assistant Federal Public Defender, was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

August 8, 2017

**TORRUELLA**, **Circuit Judge**. Defendant-Appellant, Brima Wurie ("Wurie"), who was sentenced as a career offender under section 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), challenges the classification of his prior Massachusetts convictions -- which include convictions for assault and battery with a dangerous weapon ("ABDW"), resisting arrest, larceny from the person, and assault and battery on a police officer -- as "crime[s] of violence" under the residual clause of U.S.S.G. § 4B1.2(a)(2). After careful consideration, we affirm.

## I. Background

Wurie was convicted of distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).[1] At the time of the sentencing hearing on March 16, 2015, Wurie had a number of prior convictions under Massachusetts law, including: two convictions for ABDW, one conviction for larceny from the

---

[1] Wurie was also convicted of firearm possession by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and of possession of fifty grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), following a four-day jury trial, but those convictions were vacated by this court in an earlier appeal and the case was remanded to the district court for resentencing on the remaining count of conviction. See United States v. Wurie, 728 F.3d 1, 14 (1st Cir. 2013), aff'd sub nom. Riley v. California, 134 S. Ct. 2473, 2495 (2014); Order, United States v. Wurie, No. 11-1792 (1st Cir. Aug. 2, 2013), Dkt. No. 53 (clarifying that the court only vacated Wurie's convictions on two of three counts).

person, one conviction for resisting arrest, and one conviction for assault and battery on a police officer.

The district court determined at sentencing that Wurie had at least two prior convictions for "crime[s] of violence," as that term is defined in U.S.S.G. § 4B1.2(a)(2), which rendered him a career offender under U.S.S.G. § 4B1.1(a).[2] Wurie's total offense level of thirty-two and his classification as a career offender yielded a Guidelines sentencing range ("GSR") of 210 to

---

[2] Under the Guidelines, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

At the relevant time, the Guidelines defined "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.S.G. § 4B1.2(a) (emphasis added). The underlined phrase, often referred to as the "residual clause," has since been eliminated from the Guidelines. See U.S.S.G. App. C Supp., Amend. 798 (effective Nov. 1, 2016).

-3-

240 months of imprisonment.[3] After considering all the 18 U.S.C. § 3553(a) sentencing factors, the district court imposed a downwardly variant sentence of 168 months of imprisonment, to be followed by seven years of supervised release, because it considered that Wurie's recent conduct showed that he was "turn[ing] [his] life around."

On appeal, Wurie concedes that the offenses for which he had been convicted previously have been "held to be crimes of violence under the [Guidelines'] residual clause." He initially argued, however, that the residual clause of section 4B1.2(a)(2), defining "crime of violence" as an offense that "involves conduct that presents a serious potential risk of physical injury to another," is unconstitutionally vague following the Supreme Court's ruling in Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"), which held that the identically worded residual clause in the definition of "violent felony" under the Armed Career Criminal Act ("ACCA") was void for vagueness under the Fifth Amendment Due Process Clause. Id. at 2557. The government initially conceded that in light of Johnson II, the Guidelines' residual clause was unconstitutionally vague, but argued that

---

[3] A total offense level of thirty-two and his criminal history category of VI yields a GSR of 210 to 262 months of imprisonment, but his GSR was capped at 240 months under U.S.S.G. § 5G1.2(b) because the statutory maximum for the count of conviction was twenty years. See 21 U.S.C. § 841(b)(1)(C).

Wurie was correctly sentenced as a career offender because his prior convictions could also be classified as crimes of violence under section 4B1.2(a)(1) of the Guidelines (commonly referred to as the Guidelines' "force clause"), inasmuch as the offenses of conviction have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).  Wurie disputes that his prior convictions were for crimes of violence under the Guidelines' force clause.

While this appeal was pending, however, the Supreme Court handed down Beckles v. United States, which held that Johnson II does not apply to the career offender guideline because the Guidelines, unlike the ACCA, are advisory, not mandatory, and thus are not subject to a vagueness challenge on due process grounds. 137 S. Ct. 886, 892 (2017).  Our decision in United States v. Thompson, then held that, in circumstances like these, we will not accept the government's concession on appeal that Johnson II invalidated the residual clause of the Guidelines.  851 F.3d 129, 130-31 (1st Cir. 2017).  Beckles thus foreclosed Wurie's initial argument.

Faced with this, Wurie modified his argument and claimed that although his constitutional challenge for vagueness was foreclosed by Beckles, the application of the Guidelines' residual clause to particular offenses must still be reconsidered in light of Johnson II.  This, Wurie contends, is so because the language

-5-

of the Guidelines' residual clause is identical to and suffers from the same deficiencies that led the Supreme Court to invalidate the ACCA's residual clause on due process grounds. In the alternative, Wurie requests that his case be remanded to the district court for resentencing in light of Amendment 798 to the Guidelines, which narrowed the definition of "crime of violence" by eliminating the residual clause, among other changes.

## II. Discussion

### A. Guidelines' Residual Clause

We review de novo preserved objections to the classification of a prior offense as a "crime of violence" under the Guidelines. See United States v. Velázquez, 777 F.3d 91, 94 (1st Cir. 2015). Because under section 4B1.1(a)(3) of the Guidelines a defendant needs to have only "two prior felony convictions of either a crime of violence or a controlled substance offense" to qualify as a career offender, we need to determine only whether two of Wurie's past convictions are for "crimes of violence" as that term is defined in the Guidelines. We begin with Wurie's two prior convictions for ABDW under Massachusetts law.

In 2009, we held in United States v. Glover, that Massachusetts ABDW is a crime of violence under U.S.S.G. § 2K2.1(a)(2) and the residual clause of § 4B1.2(a). 558 F.3d 71, 79-80 (1st Cir. 2009). There, we explained that

-6-

> to qualify as a crime of violence under the residual clause, the offense at issue must also "(i) pose a degree of risk that is similar to the degree of risk posed by the enumerated offenses -- namely, arson, burglary, extortion, and offenses involving the use of explosives -- <u>and</u> (ii) be similar 'in kind' to those offenses."

Id. at 80 (quoting United States v. Almenas, 553 F.3d 27, 34 (1st Cir. 2009)). We noted that the ABDW "statute applies to an individual who 'commits an assault and battery upon another by means of the dangerous weapon.'" Id. at 80-81 (quoting Mass. Gen. Laws ch. 265, § 15A(b)). "Because a defendant must employ a 'dangerous weapon' to be convicted of ABDW, it is evident that the offense poses a serious potential risk of physical injury to another. . . . [E]ither the perpetrator applied force by means of an instrumentality designed to produce death or great bodily harm, or applied force with an instrumentality by using it in a dangerous manner." Id. at 81. We found that ABDW "is a purposeful offense . . . that involves conduct at least as aggressive and violent as the conduct at issue encompassed by the enumerated crimes." Id. In rejecting Glover's argument that, because some convictions for ABDW may involve non-violent conduct, ABDW could not be categorically a crime of violence, id. at 82, we noted that "[w]hen determining whether ABDW qualifies as a crime of violence, we are governed by the Supreme Court's admonishment . . . that not 'every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury' before the

-7-

offense can be classified as a crime of violence. Rather, we are instructed to consider the 'ordinary case.'" Id. (quoting James v. United States, 550 U.S. 192, 208 (2007)). We concluded "with confidence that the ordinary ABDW offense creates a serious potential risk of injury to another." Id.

We took a similar approach in United States v. Hart, where we held that a conviction for ABDW was a predicate offense under the ACCA's residual clause.[4] 674 F.3d 33, 44 (1st Cir. 2012). There, Hart urged us to reconsider our holding in Glover in light of the Supreme Court's decision in Johnson v. United States, 559 U.S. 133 (2010) and our decision in United States v. Holloway, 630 F.3d 252 (1st Cir. 2011), and hold that "because ABDW also may be committed recklessly, it cannot qualify as a categorical ACCA predicate." Hart, 674 F.3d at 41-42. We declined Hart's invitation. Id. at 42. We noted that "an ABDW conviction may rest on a recklessness theory, and it is not insignificant that reckless ABDW may be committed with a seemingly innocent object used in a dangerous fashion, as in the case of a reckless, vehicular ABDW." Id. at 43 (footnotes omitted). We

---

[4] Because "[t]he Guidelines' definition of 'crime of violence' closely track[ed] the definition of 'violent felony' in the [ACCA], 18 U.S.C. § 924(e), and the residual clauses in each [were] identically worded," this court "treated interpretations of one as persuasive authority relative to the other." Glover, 558 F.3d at 80 n.3.

held, however, that "this fact pattern does not represent the vast majority of ABDW convictions, and our analysis under the residual clause is explicitly, and necessarily, limited to the 'ordinary case.'" Id. at 43 (citing James, 550 U.S. at 208). We concluded that, because in the ordinary case of ABDW a "composite of purposeful, violent, and aggressive conduct is the norm, . . . a conviction for Massachusetts ABDW qualifies as a predicate offense under ACCA's residual clause, pretermitting the need to analyze it under the force clause." Id. at 44.

After Glover and Hart were decided, the Supreme Court handed down Johnson II, in which it invalidated the ACCA's residual clause, finding it unconstitutionally vague. Johnson II, 135 S. Ct. at 2563. Because the ACCA's and the Guidelines' residual clauses were identically worded, the government conceded in many cases, including this one, that the Guidelines' residual clause was also unconstitutionally vague and urged the courts to find that ABDW was a crime of violence under the Guidelines' force clause. See, e.g., United States v. Tavares, 843 F.3d 1, 9 (1st Cir. 2016). In light of the government's concession, in Tavares, this court assumed without deciding that the Guidelines' residual clause was unconstitutionally vague and analyzed ABDW convictions under the force clause, U.S.S.G. § 4B1.2(a)(1). Id. at 13 (finding that a conviction for "the intentional and unjustified use of force upon the person of another, however

-9-

slight" with a dangerous weapon (subsection 1 of ABDW) is a crime of violence under the force clause, and refusing to decide whether a conviction under the recklessness theory (subsection 2 of ABDW) is also a crime of violence under the force clause). However, in March 2017, the Supreme Court clarified in Beckles that Johnson II does not apply to section 4B1.2(a) of the Guidelines because the Guidelines, unlike the ACCA, are not subject to vagueness challenges under the Due Process Clause. Beckles, 137 S. Ct. at 892.

After Beckles was issued, this court decided Thompson, which affirmed the district court's sentencing of Thompson as a career offender relying in part on a Massachusetts ABDW conviction that it deemed a crime of violence under the residual clause of section 4B1.2(a)(2). 851 F.3d at 130-31.

Wurie urges us to depart from this precedent. Despite Beckles's clarification that the holding in Johnson II does not apply to the Guidelines' residual clause, Wurie argues that our precedent is no longer good law and should be reconsidered in light of Johnson II because both the Guidelines' and the ACCA's residual clauses are identically worded and thus section 4B1.2(a)(2) implicates many of the same concerns identified in Johnson II. Specifically, Wurie argues that Beckles did not discuss how the Guidelines' residual clause should be interpreted in light of Johnson II, or what criteria must be employed in determining

-10-

whether any particular offense qualifies as a "crime of violence" under the Guidelines' residual clause.

Wurie, however, does not convincingly explain how we can overcome the law of the circuit rule and thus depart from our precedent, in light of his acknowledgement that neither Beckles nor Johnson II discuss how the Guidelines' residual clause should be interpreted, or what criteria must be employed in determining whether any particular offense qualifies as a "crime of violence" under the residual clause; especially when our precedent does address these issues.

The law of the circuit rule (a branch of the stare decisis doctrine) holds that "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point." San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010). "Although this rule is not 'immutable,' the exceptions are extremely narrow and their incidence is hen's-teeth-rare." Id. (internal citation omitted). These "exceptions come into play only when the holding of the prior panel is 'contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling).'" Id.; see also United States v. Montoya, 844 F.3d 63, 73 n.5 (1st Cir. 2016) (quoting United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008)). An even less common exception

-11-

has been recognized in those "rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind."  Rodríguez, 527 F.3d at 225 (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995)).

Here, there has been no en banc decision from this court contradicting our holding in Glover.  Also, there has been no statutory overruling.  Although the United States Sentencing Commission eliminated the residual clause from the Guidelines through Amendment 798, as will be discussed infra, Amendment 798 was not made retroactive.  Furthermore, as Wurie himself concedes, Beckles, which dealt with the Guidelines' residual clause and refused to extend Johnson II's holding to the Guidelines, did not specify how Johnson II, which dealt with the ACCA's residual clause, affects the interpretation of the Guidelines' residual clause.  Thus there is no Supreme Court opinion directly on point contradicting our precedent.  We are thus left to consider the only remaining exception to the law of the circuit rule -- whether Johnson II, although not directly controlling, offers a sound reason for believing that the Glover panel would change its collective mind.

Wurie's main contention on this point is that Johnson II overruled James, which had set out the "ordinary case" analysis

-12-

used in Glover.  According to Wurie, this analysis, which looks at "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another," James, 550 U.S. at 208, was in turn relied on by this court in holding in Glover that Massachusetts ABDW is a crime of violence under the Guidelines' residual clause.  But, according to the government, this does not satisfy the law of the circuit exception because Johnson II does not mandate the conclusion that the "ordinary case" analysis is invalid in all its applications.  The government argues that Johnson II identified the "ordinary case" analysis as only one part of its conclusion as to why the residual clause of the ACCA was unconstitutionally vague.  It posits that the Supreme Court ultimately ruled that the ACCA's residual clause was unconstitutionally vague because it both failed to give fair notice to the defendants and led to arbitrary enforcement by judges.  The government argues, however, that these same concerns cannot be translated into a Guidelines case and that the Supreme Court already rejected in Beckles that the fair notice concern presents an issue in cases under the advisory Guidelines.

     We find the government's arguments more persuasive.  We do not read Johnson II as necessarily rejecting the "ordinary case" analysis in all of its applications.  Instead, we infer from Johnson II that the analysis applied in James does not provide clarity to the facially ambiguous language of the ACCA's residual

-13-

clause. Because the Supreme Court has given different treatment to the exact same language in the ACCA's and the Guidelines' residual clause due to the inherent differences of both provisions -- the former being mandatory while the latter is not -- see Beckles, 137 S. Ct. at 892, we are not persuaded that Johnson II "offers a sound reason for believing" that the panel in Glover "would change its collective mind" in light of Johnson II. Rodríguez, 527 F.3d at 225 (quoting Williams, 45 F.3d at 592). Even Wurie concedes that "[w]ith . . . James . . . overruled, whether the ordinary case analysis remains viable, and, if so, how the ordinary case should be defined, is unclear." Accordingly, we do not believe that the standard set in Rodríguez has been met and thus decline Wurie's invitation to reconsider our precedent.

Applying our on-point precedent, we hold that Wurie's two prior convictions for ABDW under Massachusetts law qualify as crimes of violence under the Guidelines' residual clause.[5] See Glover, 558 F.3d at 80; see also Hart, 674 F.3d at 44.[6]

---

[5] We likewise reject Wurie's argument that the rule of lenity requires us to revisit the holdings of our earlier cases. Lenity is not a new concept, and therefore itself provides no basis upon which to ignore on-point precedent. See United States v. Councilman, 418 F.3d 67, 83 (1st Cir. 2005) (en banc).

[6] Because the career offender guideline only requires two prior convictions for a "crime of violence," we need not consider whether Wurie's other prior convictions were also for "crime[s] of violence."

**B. Amendment 798**

As a fallback argument, Wurie argues that his case should be remanded to the district court for resentencing in light of Amendment 798 to the Guidelines, which narrowed the definition of "crime of violence" under U.S.S.G. § 4B1.2(a) by eliminating the residual clause, among other changes. Wurie concedes that Amendment 798 was not made retroactive,[7] but argues that where, as here, a non-retroactive substantive amendment to the Guidelines post-dates a defendant's sentencing, we have discretion to remand the case for resentencing. Citing to United States v. Godin, 522 F.3d 133 (1st Cir. 2008) (per curiam) and United States v. Ahrendt, 560 F.3d 69 (1st Cir. 2009), Wurie urges us to exercise that discretion and remand his case to the district court. We decline to do so.

In Godin, the United States District Court for the District of Maine, upon learning that Godin had committed two prior crimes of violence, deemed her a career offender and sentenced her to 262 months. 522 F.3d at 133-34. On appeal, Godin challenged the district court's determination that she was a career offender.

---

[7] The Sentencing Commission can opt to make amendments retroactive, but it chose not to do so in this case. See United States v. Strevig, 663 F. App'x 908, 913-14 (11th Cir. 2016) (unpublished) (holding that Amendment 798 is not retroactive because the Sentencing Commission decided not to make it retroactive and it is not a clarifying amendment but rather a substantive change to the career offender guideline).

-15-

Id. at 134.  While Godin's appeal was pending, the Sentencing Commission amended the rules for determining when multiple crimes are counted as one for criminal history purposes.  Id.  Under this new amendment ("Amendment 709"), Godin's two prior crimes of violence would have counted as one and she would not have qualified as a career offender, thus substantially reducing her GSR.  Id.  Although Amendment 709 was not retroactive, which meant that Godin was not entitled to reap its benefit, we remanded the case to allow the district court an opportunity to consider "the [Sentencing] Commission's current policy position on who should be deemed a career offender."  Id. at 136; see also Ahrendt, 560 F.3d at 79-80 (likewise remanding the case to allow the district court to decide whether, in light of Amendment 709, the defendant's prior sentences should be counted as a single sentence).

But Godin and Ahrendt both treat the issue as discretionary for this court.  United States v. Adams, 640 F.3d 41, 43 (1st Cir. 2011) (per curiam).  We have not always chosen to exercise that discretion.  See id. (declining to exercise discretion to remand in light of a later amendment to the Guidelines when "the district court was made aware at sentencing of the proposed guideline amendment").  We find the instant case to be more analogous to the more recent case of United States v. Matos, 611 F.3d 31 (1st Cir. 2010).  In Matos, the defendant, like Wurie, asserted that the court should remand his case to the

-16-

district court for resentencing consistent with Godin and Ahrendt, so that the district court could decide whether Amendment 709 needed to be considered in determining his sentence. Id. at 38-39. We concluded, however, that the resentencing process upon remand for Matos would be much more complex than that of Godin and Ahrendt -- in those cases, it was "evident" that, if the amended Guidelines had been in effect at the time the defendants were sentenced, "the offenses at issue would have been counted as one" and the defendants would not be subject to the career offender enhancement. Id. at 39. In Matos, it was much less clear whether Amendment 709 would apply or change Matos' status as a career offender. Id.

Likewise here, although Amendment 798 eliminates the residual clause of the Guidelines, there still remains a significant possibility that Wurie would be subject to the career offender enhancement under the force clause. Under Amendment 798, the Sentencing Commission revised the definition of "crime of violence" as defined in section 4B1.2(a), eliminating the residual clause and deleting burglary of a dwelling from the enumerated offenses clause (§ 4B1.2(a)(2)), while leaving the force clause (§ 4B1.2(a)(1)) intact. If we were to remand the case and the district court were to apply Amendment 798, it would then have to determine whether at least two of Wurie's prior offenses -- resisting arrest, larceny from the person, ABDW, and

-17-

assault and battery on a police officer -- qualify as crimes of violence under the force clause.[8] This determination will be much more complicated and unlike the one involved in both Godin and Ahrendt, where the district court had to make a simple mechanistic change -- counting the defendant's prior offenses as a single sentence rather than separate sentences. Because remand will potentially lead to a time-consuming process, and sentencing courts are not mandated to take into consideration non-retroactive substantive amendments to the Guidelines that post-date a defendant's sentencing, we hold, just as we did in Matos, that it is not prudent to remand this case for resentencing. 611 F.3d at 39.

### III. Conclusion

Because Beckles did not extend the ruling of Johnson II to the Guidelines, the Guidelines' residual clause, as it stood at

---

[8] The process would require determining whether any of the statutes of conviction that Wurie violated are divisible and can be violated in multiple ways, some of which satisfy the amended definition of crime of violence while others do not. If such is the case, the court would then need to look at Shepard documents to identify the specific offenses for which Wurie was convicted and determine if those satisfy the definition. See Shepard v. United States, 544 U.S. 13, 26 (2005); see also United States v. Faust, 853 F.3d 39, 52-53 (1st Cir. 2017), reh'g denied, No. 14-2292, 2017 WL 3045957 (1st Cir. July 19, 2017). This process would also require identifying and tracking down Shepard documents if they are not readily available, analyzing those documents to ascertain Wurie's specific offenses of conviction, and deciding whether those offenses qualify as crimes of violence.

the time of sentencing, is still a lens through which Wurie's prior convictions may be judged. Under the Guidelines' residual clause, Wurie's ABDW convictions were for "crime[s] of violence." Accordingly, he was correctly sentenced as a career offender.

**Affirmed.**