UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 08-10071-RGS |
| | ) | |
| BRIMA WURIE | ) | |

_____ )

MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION

Brima Wurie will admit to certain violations of his conditions of supervised release. He

has been detained since September 6, 2023 after having served nine months in state custody

based on the conduct set out in the major violation to which he will admit.  This memorandum is

submitted in support of his request that he be continued on supervised release and obtain

counseling for anger management and dealing with stressful situations.

Mr. Wurie was released from the Bureau of Prisons on September 13, 2019 and began his

term of supervised release. After 12 years of incarceration he reunited with his family, started a

new relationship, and in addition to his daughter who is now 16, has 3 additional children - a son

now three and two sons now two.  He completed the Building Pathways program, a building

trades pre-apprenticeship program, and became a member of the Ironworkers Union Local 7. In

2022 he and his partner started a property management business– Do-It-All Maintenance LLC.

He was involved in his community. For 38 months he made steady progress. *See* Mr. Wurie's

letter to this Court, appended as Exhibit A and some documents from his business appended as

Exhibit B.

In late November, 2022 he was arrested and charged with unarmed robbery, possession

of a firearm, and assault and battery with a dangerous weapon arising out of an incident in a

liquor store in Dorchester, MA. He was detained pending trial. After a jury trial in Suffolk

Superior Court in August, 2023 (Hon. Peter B. Krupp presiding) he was found not guilty of

unarmed robbery and possession of a firearm and guilty of assault and battery with a dangerous

weapon. At his sentencing on September 5, 2023 Judge Krupp described the following:

> The trial evidence allowed the jury reasonably to find that given the circumstances inside the liquor store on that particular evening, November 25, 2022, Mr. Wurie took the firearm from Tykent Rogers under the reasonable belief that he, Mr. Wurie, was preventing a greater harm by doing so, or was defending a third party, his brother, but that he did not have the intent to deprive Mr. Rogers of the firearm permanently.
> The jury also could have reasonably found that Mr. Wurie's actions shortly after disarming him, specifically striking Mr. Rogers in the head with the firearm in a single blow while he was still – Mr. Rogers was still wrestling on the floor with Mr. Wurie's brother, was unnecessary and gratuitous, maybe an overaction [sic], but not something that Mr. Wurie's brother would have been entitled to do in self defense under the circumstances given the nature of the tussling after they were on the ground.

Sentencing Transcript, September 5, 2023, pp.18-19, appended as Exhibit C.

In imposing a sentence of 18 months in the House of Correction, nine months to serve

(and deemed served) and the balance suspended during two years of probation[1], Judge Krupp

explained:

> I recognize that the injury was minor, as the Commonwealth says, did not require any real medical attention. There was a – and I don't mean to under estimate any kind of laceration, but it was relatively minor to Mr. Rogers' head....I don't think Mr. Wurie was a leader in the context of what happened here very quickly in time with he and his brother and one other person involved with Mr. Rogers....I recognize that these actions were not anything that was – that were planned by Mr. Wurie, that they were somewhat impulsive...this seems to be something that is reactive in the moment, and the offense of conviction is a function of not being able to harness those emotions in the moment.

Exhibit C, pp.19-21.

---

[1]  The Commonwealth requested 3-5 years in State Prison. Mr. Wurie requested a time served sentence. Exhibit C, pp.4,8.

These assessments are supported by Mr. Wurie's letter to this Court (Exhibit A) and videos from the liquor store's surveillance cameras. In the video clip captioned "ceiling view 39" (to be submitted as Exhibit E), beginning at approximately minute 41:05, Mr. Wurie  (wearing a red cap) can be seen entering the view and walking over to talk to Mr. Rogers' girlfriend at a register. Mr. Rogers is standing next to her. Mr.Wurie's younger brother is standing next to Mr. Wurie. Mr. Wurie then speaks with Mr. Rogers and they shake hands (at approximately minute 41:51), continue talking, and bump fists (at approximately minute 42:22). Mr. Wurie moves away and stops at another register. Mr. Wurie's brother remains interacting with Mr. Rogers. Shortly thereafter Mr. Wurie returns and moves between his brother and Mr. Rogers (at approximately minute 43:10). The confrontation between Mr. Wurie and Mr. Rogers ensues. Mr. Wurie leaves the store approximately 30 seconds later (at approximately minute 43:40).

The video clips captioned "behind register 104," from approximately 1:03:24 to approximately 1:06:07 (to be submitted as Exhibit F), and "front corner 24," beginning at approximately minute 23:28 to approximately minute 26:10 (to be submitted as Exhibit G) provide other views of the same interactions. The videos show Mr. Wurie holding the gun as he was pushed out of the store by the security guard. Video of the side street ( to be submitted as Exhibit H) shows Mr. Wurie walking down the street holding a gun, returning moments later without the gun, and getting into his car and driving away. It is reasonable to infer that he disposed of the gun before he got into his car.

The state grand jury minutes, introduced by the government at the detention hearing, confirm that the firearm involved in the November 25, 2022 incident belonged to Mr. Rogers and not Mr. Wurie. While some of the testimony from Mr. Rogers' girlfriend is not completely clear, she testified that Mr. Rogers had exposed his firearm while he was in a conversation with the "medium" gentleman (Mr. Wurie's brother), who said something like "oh, he got a gun, like, or

he's trying to pull out the gun or you're pulling out your gun." Grand Jury transcript, February 1, 2023, Govt. Ex. 03.5A sealed, p.28, 39. It was after that that Mr. Wurie moved in to grab the gun.

In imposing as a condition of probation that Mr. Wurie not commit another crime, Judge Krupp stated: "I recognize Mr. Wurie's significant changes in his behavior over the time he was out on federal supervised release, the fact that he was able to start a job, start a family or restart a family, and be a significant asset to his community and family during that time period." Exhibit C, p.21.

Other conditions of probation were stay away from and no contact with Mr. Rogers or the liquor store. Judge Krupp declined to impose a condition of maintaining employment requested by the Commonwealth, stating that maintaining employment "is something that Mr. Wurie is going to do without the need for the Court's intervention…" Exhibit C, p.22.

The court released Mr. Wurie with instructions to report to the federal court to address the arrest warrant issued in connection with this supervised release revocation proceeding. Exhibit C, p.24. Mr. Wurie reported to this Court the following morning, September 6, 2023. He was ordered detained after a hearing on September 8, 2023.

Mr. Wurie has now been in custody for almost a year in connection with the assault on November 25, 2022. As set out in his letter to this Court (Exhibit A) he recognizes that he would benefit from additional counseling to learn how to better handle unexpected problems that he may confront in the future.

Family, friends, and other members of the community submitted letters in connection with his sentencing in Superior Court, describing Mr. Wurie as a hard-working individual,

devoted to his family and community, who had made great strides since his release from federal prison. They are attached as Exhibit D.

Cynthia Martinez is the mother of Mr. Wurie's youngest son.  She is a constable for the City of Boston Inspectional Services Division and his partner in Do-It-All Maintenance LLC. She wrote of Mr. Wurie's focus on his family and his hard work in the Building Pathways Program and building maintenance/repair business. "Brima had been working hard to stay busy and out of trouble….During that process [the Building Pathways program] I witnessed him wake up early mornings to get to class and stay up late nights to study…" "Brima is a kind and considerate individual who is always willing to lend a helping hand to others. I have seen him always gone above and beyond to ensure that everything runs smoothly whether it be with the business or our family. Brima's ultimate focus has and still is to be able to provide for his family and be the best possible father." Exhibit D, p.1.

Janelle Watty, a member of the community and the Dean of Students at the middle school of New Heights Charter School, described Mr. Wurie's community and family involvement. She wrote of his positive involvement with the children in the community and described him as "one of the most caring and helpful people I know in the community." She also described him as "a present dad. He loves all of his children and he makes the world know it….This is a man who cares about his kids and will always make sure they are all set. I would describe Brima as family oriented. He loves his family and enjoys spending time with his family." Exhibit D, pp.3-4.

Kathleen Carvalho, a healthcare administrator who has worked at the Dimock Center and the Boston Medical Center, wrote: "In the nearly two decades that I've been friends with Brima, he's always been the consummate family man. Maybe at times, to a fault. He is staunchly

supportive and protective of those with whom he holds close." She also wrote of "watch[ing] him rebuild himself upon his release and work to gain new skills." Exhibit D, p.5.

His father, Brima Wurie Sr., recognized his son's past and wrote "but that is not who he is today. Today he is a brave, courageous and reliable businessperson….He is a loving father of 4….He is always willing to give his last to help someone in need. His children look up to him." Exhibit D, p.6. His mother, Marilyn Wurie, wrote: "Brima was doing very well these past few years sine he came home. He kept busy working and even started his own business…Brima is a father of four children ….He is a very good and loving father and very involve with his kids lives." Exhibit D, p.16. His younger brother, who was with him at the liquor store, wrote of the positive changes in Brima's life after his release from prison: "I noticed his focus transitioned into spending time with his growing family and creating bonds. Additionally, he made it his mission to guide his oldest child in the right direction….Brima also has great relationships with the young boys around our neighborhood…he also constantly encourages the kids around to do well in school."  He described Mr. Wurie's work ethic: "My brother is also work oriented. When Brima came home he got into construction and completed a program to become an ironworker….Additionally my brother created his own business. He pursued property management and worked maintenance for many properties." Exhibit D, p. 7.

An independent filmmaker, Dina Rudnick, who met Mr. Wurie while filming in Dorchester in the summer of 2022 and stayed in touch after the shoot described her conversations and interactions with him. "Brima told me about his troubled youth, his large and loving family, his children, his partner, his business and dreams for the future. In him I saw an inspiring soul – a person with incredible gifts who succumbed early to dark forces, but has meaningfully stepped with purpose again and again toward what he grew to value most. Brima

told me many times that he wants to help his neighborhood heal – that he wants to help young men avoid the trap he fell into as a teen. And its not idle talk; he's built a thriving business in which people depend on him, he has a beautiful relationship with his partner Cynthia and a young child who looks up to him. I saw clearly the love and respect his peers have for him during that summer evening in Dorchester. He has become a role model for many in the community." Exhibit D, p.8.

A friend who has known Mr. Wurie from school wrote that he "is an intelligent person who has overcome adversity and was on the right track." "[S]eeing the joy on Brima's face [at his youngest child's baby shower] let me know that he was continuing on the right path." Exhibit D, p.10. Another long-term friend wrote that after Mr. Wurie returned from federal prison "I noticed a change in his daily life. Brima was already a father and then he became a dad to three more children Brima's attention has been focused on the wellbeing of his children and being the best dad any father would want to be. His children love him and he loves them. There is a special bond between him and his children but also between Brima and his family." He also described Mr. Wurie's community involvement. "He was willing to help people in the neighborhood who were less fortunate. Brima has positively affected our community in many ways. Also Brima had goals to better our community. He wanted to create a safe space for the kids around the neighborhood after school to keep them off the street. He often talked about buying and renting out a space in the neighborhood and building a center for kids to have fun. Brima is a good person and puts other people before himself. Especially his children and the kids who live around our neighborhood." Exhibit D, p.11. Another wrote: "In recent years, Brima has shown and proven to be a man focused on 'putting the pieces {of life} back together.'" Exhibit D, p.19.

Jeannette Davis met Mr. Wurie in his neighborhood as her sister lives across the street from him, shortly after his return from federal prison. She described his family and community involvement and his work ethic, as well as support for her efforts both in business and as a single mother. "I have seen him throwing a football around with young kids that also live on the street, he helps his neighbors carry groceries into their homes....Just as much as he is caring and kind he is hard working. The amount of work and dedication I saw him pour into his maintenance company is inspiring to say the least. His drive and attitude toward success has had a profound effect on me to become a better version of myself. He has coached and guided me to my own path of success....Brima is an amazing father, a kind hearted son, a compassionate brother and an admiral friend..." Exhibit D, p.17.

For 38 months after his release from twelve years of federal incarceration Mr. Wurie made great strides in reentering society and being a productive, caring, family man and member of his community. While he made a serious mistake in November, 2022, that mistake does not define him. The letters from family, friends, and other community members attest to the changed person he has become since his return to the community. He has now been incarcerated for more than eleven months in both state and federal custody in connection with that offense. He feels that supervised release has helped him and recognizes his need for further counseling to address his reactions to stressful situations. Additional incarceration is not needed to either punish him or protect society. For the reasons set forth above, he asks that this Court continue him on supervised release with additional conditions for counseling.

Respectfully submitted,
Brima Wurie,
by his attorney
/s/ Judith H. Mizner
Judith H. Mizner
BBO # 350160

FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02201
(617) 223-8061

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 25, 2023.

*/s/ Judith H. Mizner*
Judith H. Mizner

# EXHIBIT A

Hon. Richard G. Stearns
United States District Court, D. Mass.
Moakley United States Courthouse
1 Courthouse Way
Boston, MA

November 22, 2023

Dear Honorable Judge Richard G. Stearns,

As I will stand before you next week, I never thought it would be under these conditions. I always envisioned when I stood before you that it would be under conditions of the completion of my probation, and me relaying all of my accomplishments and existing future goals to you. Unfortunately, we are here today because of a completely unexpected situation last November. This was not a situation I went out looking for or was premeditating. I was not looking to do any ill will or harm to anyone. This as I said was an unfortunate situation, your Honor.

Upon my release from federal prison in 2019 I was in compliance with my probation for the entire duration of my release until last November. I never was a believer in probation before. I always looked at being on probation as a punishment, an inconvenience, or a way to avoid prison. But being on Federal Probation this time around, I believe it had actually done me good.  The only problem that I had was the revolving doors of different probation officers that were appointed to me. I felt not having a consistent probation officer that would fully handle my case from beginning to end disrupted the relationship I built with my original probation officer. When I was first released my first probation officer's name was Melissa Charlton. She got to see my evolution from the start, until she was promoted. During the 22 months that Melissa was my Probation Officer I felt she and I grew an incredible bond. She worked extremely well with me and helped me with my transition from prison. Melissa was able to sympathize and understand me. I feel Melissa saw my progress from the beginning, she saw all my hard work and all I had to endure and persevere to get where I got and was continuing to go. Melissa was a big part in getting me in the anger management program and Building Pathways program. Unfortunately, she got promoted and I was placed with another probation officer.

I was placed with my second probation officer for only a short period of time. I felt I had no relationship with him. He was an African American individual that I had for about 4 months. Sad to say I do not even remember his name. He then was replaced by Taylor Wertz who is my third and current probation officer. Taylor Wertz has been my probation officer for 12-16 months. I have had a copacetic relationship with her. She has been fair with me. However, the inconsistency of probation officers and being switched so many times interfered with my building of a continuing strong bond.

**EXHIBIT A**

During my time since being released from prison I have been using every ounce of my time productively, your Honor. Everything that I discussed with you before, I have accomplished or was in the process of working on until this unfortunate situation which set back my progression in life.

When I set forth and completed the Building Pathways program I was able to narrow down my trade selection and enter into a local union, I chose Local 7, Iron Workers. I have also completed all my certifications to be in the union such as: Osha10, HazMat & CPR, (just to name a few). In addition to staying fully employed since coming home I have also opened my own successful business called "Do It All Maintenance LLC".

I have extended my family to include 3 more boys your Honor. I have been building a great and strong foundation with my daughter, who needs a father figure desperately at this critical age (16) and turning point in her life. I have been in-tuned with every aspect of my children's lives since coming home. I have been in constant communication with my daughter's teachers and guidance counselors. I have helped and been a part of all of her events and activities at school. Since I've been home I've been trying my best to account for all the time that I have missed with her. My children need me and I need them.

I hope that you understand your Honor that I got into this lose-lose situation in an attempt to protect my brother and myself. I understand that I over- reacted and take full responsibility for that. I would like to get some one-on-one anger management counseling to help me address my reactions. But if you can understand your Honor, I have lost 12 years of my life to my last incarceration and was rebuilding my life from the ground up. I saw myself almost losing it to an individual that I thought randomly pulled out a firearm to cause harm to my brother and me or potentially to kill us. All I could think about was disarming this individual and us making it back home to our family. I reacted instinctively both in disarming the individual and in returning when I saw him struggling with my brother on the floor and was in the heat of the moment trying to protect us. I was not out looking for this problem your Honor. I felt we could have died that night, but I understand the importance of developing a way to better handle problems that come my way unexpectedly.

I have now been placed back into custody awaiting resolution of these revocation proceedings since September 6, 2023 when I turned myself in to the federal court. I was also in custody for nine months before my state court trial for charges from the same events. I have had time to reflect on my actions and need for additional counseling and would love to get back home to my family and community. I hope that you can see all my accomplishments. I can only hope that you can see the hard work that I have put in since my release to become a productive member of society and a support for my family, my potential to contribute to society in the future, the positive change that I

**EXHIBIT A**

have been committed to, and the growth that I want to continue nurturing with my family and community.

Sincerely,

Brima A Wurie Jr.



## The Commonwealth of Massachusetts
## William Francis Galvin

**Minimum Fee: $500.00**

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

### Annual Report
(General Laws, Chapter )

**Identification Number:** 001432233

**Annual Report Filing Year:** 2022

**1.a. Exact name of the limited liability company:** DO IT ALL MANAGEMENT LLC

**1.b. The exact name of the limited liability company** *as amended*, **is:** DO IT ALL MANAGEMENT LLC

**2a. Location of its principal office:**

| | | | | |
|---|---|---|---|---|
| No. and Street: | 51 SPEEDWELL ST. #2 | | | |
| City or Town: | BOSTON | State: MA | Zip: 02122 | Country: USA |

**2b. Street address of the office in the Commonwealth at which the records will be maintained:**

| | | | | |
|---|---|---|---|---|
| No. and Street: | 51 SPEEDWELL ST. #2 | | | |
| City or Town: | BOSTON | State: MA | Zip: 02122 | Country: USA |

**3. The general character of business, and if the limited liability company is organized to render professional service, the service to be rendered:**
MAINTENANCE MANANGEMENT AND WORK. LANDSCAPING AND CONSTRUCTION OF THE SORT AND ETC. IN THE CONSTRUCTION FEILD AND OTHER MANAGEMENT OF BUSINESS.

**4. The latest date of dissolution, if specified:**

**5. Name and address of the Resident Agent:**

| | | | | |
|---|---|---|---|---|
| Name: | BRIMA A. WUNLE,JR. | | | |
| No. and Street: | 51 SPEEDWELL ST.#2 | | | |
| City or Town: | BOSTON | State: MA | Zip: 02122 | Country: USA |

**6. The name and business address of each manager, if any:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| | | |

**7. The name and business address of the person(s) in addition to the manager(s), authorized to execute documents to be filed with the Corporations Division, and at least one person shall be named if there are no managers.**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|

| SOC SIGNATORY | CYNTHIA MARTINEZ | 51 SPEEDWELL ST. #2<br>BOSTON, MA 02122 USA |
| --- | --- | --- |

**8. The name and business address of the person(s) authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
| --- | --- | --- |
|  |  |  |

**9. Additional matters:**

**SIGNED UNDER THE PENALTIES OF PERJURY, this 6 Day of September, 2022,**
BRIMA A. WURIE JR. **, Signature of Authorized Signatory.**

© 2001 - 2022 Commonwealth of Massachusetts
All Rights Reserved

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

September 06, 2022 12:12 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

3

# INVOICE

## DO IT ALL MANAGEMENT, LLC

*DATE: 3/27/2023*

*INVOICE #111*

*BILL TO: 330 REALTY TRUST AND STATE FINANCIAL INC*
*Address: 197 PORTLAND ST BOSTON MA 02114*

51 SPEEDWELL ST
Boston, MA 02122
857-217-8788

Phone

| DESCRIPTION | AMOUNT |
|---|---|
| FIRE LINE REPAIR @ 254 Friend ST - LL EXCAVATION &UTILITIES. | $          3,750.00 |
| DEPOSIT REQUEST OF 50%. REMAINING BALANCE IS DUE UPON COMPLETION OF PROJECT. | |
| APPROXIMATE START DATE: 4/11/2023 ONCE PERMITS ARE OBTAINED | |
| | |
| | |
| | |
| | |
| | |
| REMAINING BALANCE: $3750 | |
| | |

| | | |
|---|---|---|
| | *SUBTOTAL* | $          3,750.00 |
| | *SERVICE FEE RATE* | 0.00% |
| Make all checks payable to DO IT ALL MANAGEMENT, LLC. | *SERVICE FEE* | $                     - |
| If you have any questions concerning this invoice please contact | *OTHER* | $                     - |
| ***Brima Wurie @857-217-8788 or Cynthia Martinez @(617) 905-6727*** | ***TOTAL*** | **$          3,750.00** |

Doitallmaintenance3@gmail.com

**THANK YOU FOR YOUR BUSINESS!**

**4**

# MAINTENANCE SUPERVISION PROPOSAL

Prepared for

**State Financial Services**

September 6, 2022

## Services

The list below contains the maintenance services that the **Do It All Management, LLC** proposes to the client as part of its monthly maintenance and supervision work.

**Do It All Management, LLC**  will oversee the day-to-day operations of the maintenance department.

⇒ Inspect and determine necessary work to maintain, lay out, and plan a systematic program of preventative maintenance and upkeep for assigned buildings and grounds.
⇒ Conduct General Repairs upon approval
  • This includes flooring, painting, electrical work, and plumbing
⇒ Estimate cost of jobs and projects to be completed outside of Do It ALL Managements scope and present to property owner.
⇒ Prepare budget requests indicating priority of work to be done.
⇒ Prepare estimates of costs and labor and compare them to actual costs when work is completed.
⇒ Supervise and evaluate assigned maintenance and operations personnel of Do It ALL Management in the performance of their duties.
  • Twice a week observation of all the properties, with complete report of all the issues and concerns found on the properties, as well as proposed solutions
⇒ Recommend employment and assignment of personnel.
⇒ Inspect work completed by outside contractors.
⇒ Make recommendations concerning the purchase of materials and equipment.
⇒ Janitorial Services
  • This service will help maintain a clean and safe environment for employees and customers. This includes weekly or bi-weekly professional cleaning of all the common area hallways.
⇒ Apartment cleaning and Turnover
⇒ Emergency after-hours call service
  • Be on call to respond to security alarms, facility and operations related emergencies
  • This service will provide emergency afterhours call service for all the tenants between 6PM and 8 AM. Immediately notifies appropriate maintenance superintendents or repair people according to SFS instructions
⇒ After hours General Repairs and Janitorial Services
  • All the services specified above, performed between 6PM and 8 AM weekdays, whole days Saturday, Sunday, and all the official USA federal holidays

## Pricing

| Description | Price | Frequency | Total |
| --- | --- | --- | --- |
| General Repairs | $30/h | As needed | TBD |
| Emergency after-hours call service | $75per week (for accepting) | As Needed | $75 per week |
| After hours General Repairs and Janitorial Services | 1.5 the regular pay (if on site) | As Needed | TBD |

# EXHIBIT C

Volume I of I
Pages: 1-28
Exhibits:  None

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                         SUPERIOR COURT DEPARTMENT

```
********************************
                            *
COMMONWEALTH OF MASSACHUSETTS  *
                            *     DOCKET NO.
v.                          *     2384CR00127
                            *
BRIMA AMADU WURIE, JR.      *
OKA BRIMA WURIE             *
                            *
********************************
```

SENTENCING HEARING

BEFORE THE HONORABLE PETER B. KRUPP

APPEARANCES:

For the Commonwealth:

Suffolk County District Attorney's Office
1 Bulfinch Place
Boston, MA  02114
By:  Michael Murphy, Assistant District Attorney


For the Defendant:

Law Office of Jeffrey M. Miller
60 Leo M. Birmingham Parkway, Suite 103
Boston, MA  02135
By:  Jeffrey M. Miller, Esq.



Tuesday, September 5, 2023
Courtroom 808
Boston, MA


SUSAN  M. LOBIE, CET
OFFICE SOLUTIONS PLUS
15 Marion Road, Salem, MA 01970
(617) 471-3510
SueLobie@osptranscriptionservices.com

# EXHIBIT C

2

<u>I N D E X</u>

                                                        <u>PAGE</u>

SENTENCING HEARING                                         3

SENTENCING                                                18

**EXHIBIT C**

3

1              P R O C E E D I N G S

2

3     (Court in session at 3:06 p.m.)

4

5         COURT OFFICER:  Court, all rise, please.

6         Court is now in session.  Please be seated.

7         THE CLERK:  Good afternoon, Your Honor.

8         THE COURT:  Good afternoon.

9         THE CLERK:  Your Honor, Number Four on our list

10    today is Commonwealth v. Brima Wurie, 2384CR00127.

11        Parties please identify yourselves for the record,

12    starting with the Commonwealth.

13        MR. MURPHY:  Michael Murphy for the Commonwealth.

14        THE COURT:  Okay.  Mr. Murphy.

15        MR. MILLER:  And Jeff Miller for Mr. Wurie, who

16    is seated at my right.

17        THE COURT:  Okay.  Very good.  Mr. Wurie, good

18    afternoon.

19        MR. WURIE:  Good afternoon.

20

21                    SENTENCING HEARING

22

23        THE COURT:  So, we're here for sentencing.  I have

24    a Sentencing Memo from Mr. Wurie and a Supplemental

25    Sentencing Memorandum, which attaches a pile of more

**EXHIBIT C**

1    letters.  I've read both of those filings.  I didn't

2    get anything from the Commonwealth and maybe that's

3    -- you didn't file anything.

4         MR. MURPHY:  That's correct.

5         THE COURT:  Okay.  So, you're both ready to be

6    heard in terms of sentencing?

7         MR. MURPHY:  Yes.

8         MR. MURPHY:  Yes.

9         THE COURT:  Okay.  Mr. Murphy, why don't I hear

10   from you.

11        MR. MURPHY:  The Commonwealth is requesting three

12   to five years in the State Prison.  I ran the guidelines

13   on this.  I see them a little differently than Mr. Miller,

14   more specifically on the Decay Provision.

15        I don't think the Decay provision applies here,

16   given that the defendant has been in custody, I'd say

17   for the large part since the entries on his record begin,

18   going back to 1996-97, numerous House of Correction

19   sentences there for two and a half years.

20        There was the conviction in Suffolk Superior in

21   2003 with three to three and the day.  There was a

22   federal case in 2003, which he was acquitted on but

23   held for a number years, and then there was the federal

24   case in 2008 that comes from that South Boston, 2007

25   and then a Suffolk Superior case, again, he was held

EXHIBIT C

1    on those dockets and convicted and sent for 14 years,

2    being released in about 2019, and then at that time,

3    was on federal supervised release.

4         THE COURT:  A 14-year sentence, but how much was

5    served?

6         MR. MURPHY:  I believe from 2007 through 2019,

7    so twelve.

8         THE COURT:  Okay.

9         MR. MURPHY:  And then up until about when this

10   incident occurred, --

11        THE COURT:  Which is 85 percent of the time, which

12   is the maximum amount of time you get for good time on

13   the federal side, which means he didn't get any kind

14   of extensions in terms of federal time; okay.

15        MR. MURPHY:  And then he had a period of federal

16   supervised released, which he was just about wrapping

17   up at the time this incident occurred.

18        THE COURT:  Okay.

19        MR. MURPHY:  So, based on the fact that he was

20   supervised and detained, whether it's sentences or

21   bails, with the large part since 1996, I don't think

22   we hit the eight years to toll that Decay Provision.

23        So, looking at the guidelines, --

24        THE COURT:  Has Probation done a guidelines

25   calculation?

**EXHIBIT C**

1      PROBATION OFFICER:  I don't have one -- I don't

2  have one in the file, Judge, but --

3      THE COURT:  Okay.

4      PROBATION OFFICER:  -- we routinely do them on

5  all cases.

6      THE COURT:  I don't have, I don't believe --

7      PROBATION OFFICER:  It may have been done last

8  time.

9      MR. MURPHY:  When I looked at the numbers, based

10  on the number of convictions here and the types of

11  convictions, I found that the defendant would be Class

12  D Repetitive or Violent Offender.

13      The range for assault and battery dangerous weapon

14  with minor injury, I think we could say that based on

15  the one laceration, it would be only zero to 24 months,

16  which I thought was -- it was surprisingly low based

17  on the number of convictions on the defendant's record.

18  However, the Commonwealth today is requesting three to

19  five, because I point to three aggravating factors that

20  the guidelines point to.

21      The first is where the defendant was a leader

22  in an offense involving two or more actors, and I would

23  submit that the evidence does show that.  I think those

24  videos were clear that if not for the defendant and the

25  co-defendant, the victim here, Mr. Rogers and his

**EXHIBIT C**

1   girlfriend, would have walked right out of that store

2   and none of this would have happened, but if it wasn't

3   for the co-defendant initially preventing the victim's

4   exit and then the defendant coming in very aggressive

5   and escalating the situation, I don't think this would

6   have occurred.  I think that's an aggravating factor

7   here.

8          The second, as I've already mentioned, the

9   defendant was on federal supervised release, that is

10  another aggravating factor that would justify going

11  above the guideline range.

12         And the third factor, I would say, is that the

13  criminal history understates the seriousness of the

14  defendant's record.  The categorization in the

15  guidelines understate his criminal record.

16         Looking at his convictions in the late 90s, they

17  are largely violent offenses, assault, battery dangerous

18  weapon, knife, assault dangerous weapon.  I have a 1996

19  Boston Police Report where the defendant stabbed someone

20  in the head.  Assault and battery on a police officer

21  involves the defendant kicking an officer in the groin

22  and fleeing to be identified later.

23         The three to three and a day he served out of

24  Suffolk Superior Court for assault and battery and

25  dangerous weapon involved the defendant fleeing the

**EXHIBIT C**

1   police in a vehicle, striking a Boston Police Officer

2   with the car.  The officer shot into the car, and a

3   passenger was killed.

4        We have his federal case, distribution Class B,

5   and then we have this case here.  And as I've already

6   stated the defendant, for the large part has been in

7   custody for many of these years, and he continues to

8   commit violent offenses.

9        So, based on this violent offense, those three

10  aggravating factors, the seriousness of his record,

11  the Commonwealth submits that a sentence of three

12  to five years in the State Prison is appropriate.

13       THE COURT:  Okay.  Does Mr. Rogers wish to be

14  heard?

15       MR. MURPHY:  He asked me to express that he would

16  stand behind whatever the Commonwealth would recommend.

17       THE COURT:  Okay.

18       MR. MILLER:  May I be heard, Your Honor?

19       THE COURT:  Yeah, sure.

20       MR. MILLER:  So, Judge, what we're asking for

21  in this case -- Mr. Wurie has 281 days in, which is

22  the equivalent of like 9.336, I believe, months since

23  he was -- that he has been held.

24       And I'm asking for a sentence of time served,

25  and I do that not to be flip, but I believe that's

**EXHIBIT C**

1    an appropriate sentence, and when you take a look

2    at what the guidelines, albeit that they're advisory

3    and they're not mandatory that the Court follow those,

4    there were some people who made some -- the Commission

5    on that made a big investment of time, right, to try

6    and come up with some uniformity in sentencing so that

7    people are being treated equally and not disparagingly.

8        And I would argue that while the circumstances

9    of this case, I would categorize them as reactionary,

10   and when I say reactionary, there wasn't anything that

11   Mr. Wurie had done here to initiate the action, it was

12   a circumstance where Mr. Rogers was reaching for a gun

13   or what appeared to be reaching for a gun, and that was

14   kind of how everything unfolded here.

15       When it started that way, clearly the jury found

16   him not guilty of the robbery and not guilty of the

17   possession of a firearm, they -- the elements of the

18   necessity, being the necessity defense in the case,

19   they found that those elements existed, and that's

20   why he was found not guilty.

21       The overaction would have been, and for the purposes

22   of sentencing here, certainly this is something that

23   we would argue differently on appeal, but for the certain

24   purposes of sentencing, he overacted when his brother

25   and Mr. Rogers were in this scuffle, fight, argument

**EXHIBIT C**

1   whatever -- however you call it when he hit him with

2   the gun.

3        Now, that being said, the guidelines categorize

4   -- they account for on the level of offense, assault

5   and battery dangerous weapon, and it says it right on

6   the chart, "no or minor injury," and then the guidelines

7   also provide a definition of, "no or minor injury,"

8   which is exactly what this was.

9        THE COURT:  And the Commonwealth agrees with that.

10        MR. MILLER:  I'm sorry?

11        THE COURT:  And the Commonwealth agrees with that.

12        MR. MILLER:  Yes.  So, it's a level -- it's a

13   base Level Three offense on the sentencing grid, and

14   then perhaps there's a dispute as to what type of

15   criminal history, whether the Decay Provision applies.

16        You know, I know Mr. Murphy is saying that, I

17   think it does apply, right, because what they're saying

18   is, in the sentencing -- in those guidelines, they talk

19   about, eight years from the date of arraignment shall

20   be, -- "shall be" is what it says, not could be, might

21   be, "shall be deemed to erase that person's criminal

22   history on that."

23        So, essentially, I think the one conviction he

24   has that scores here is this federal conviction, and

25   while it doesn't -- the guidelines don't make any --

**EXHIBIT C**

1    at least I didn't see where they score a federal

2    conviction, what I did was take the concomitant

3    provision of distribution of cocaine, which would

4    be a Level Four offense in State Court.

5         Level Three or Level Four offense puts him at

6    a moderate record, where you have one or two convictions

7    for a Level Three or Level Four offense on a base Level

8    Three, that's zero to 15 months, is where it is.

9         We're asking for the nine months and 9.3 months

10   here, it's squarely within what the guidelines would

11   call for.

12        Again, to accomplish the goals of sentencing,

13   certainly punishment is one of the things.  I would

14   argue that a nine plus month sentence is sufficient

15   punishment where there was no injury, where there were

16   -- the circumstances surrounding it, and he accepts

17   the fact that the jury convicted him of the ABDW, but

18   there were extenuating circumstances around the necessity

19   on the robbery and the gun charge.  So, I would say

20   that the nine plus month is a sufficient punishment,

21   it certainly --

22        You see the letters that I have attached, along

23   with -- in support of -- for the Court to consider

24   relating to his sentencing argument.  One of the common

25   threads, and that's from family members, that's from

friends, that's from people who he's worked with,

you know, all walks of life, one of the things that

they talk about is, he's been -- he's a very ambitious

guy, he started his own company.  Once he was released

from the federal sentence, he was working in the iron

-- or he had been working in the Iron Worker's Union.

So, he's a guy who has some goals here, and to

say that this is -- like a longer sentence would be

necessary to do any kind of rehabilitation, he had

all of this in place.  It's taken a little bit of

a back seat now that he's been in custody for nine

months and he's not been able to do this, but I can

assure you that he's going to -- when he steps out the

door, he's going to get right back into, you know,

what he was doing from a business perspective.

And you also see that another common thread there

is his -- the love of the neighborhood for him, dealing

with kids, seeing him with kids playing basketball,

throwing a football with them, giving them money to

buy candy, you know, carrying groceries home for some

of the elder ladies.  You know, those are things that

again, I think it was about 15 letters that we had all

tolled there that these are common threads that you're

seeing throughout the -- those letters from each one

of those people.

1       So, there's not any kind of protection of the

2   public that's going to go along with a longer sentence,

3   and a certainly a deterrent, the guy is 44 years old

4   now, all right, he has four children, so he -- in terms

5   of deterrent, as far as future criminal activity goes,

6   he did what he thought was appropriate in this case, the

7   jury agreed with him on most of that, and again, on the

8   ABDW, if anything, it was -- you know, he accepts the

9   verdict, but an overaction probably in the heat of the

10  moment.

11      So, all those things considered together, Judge,

12  I think the sentencing guidelines are zero to 15 with

13  what I believe is a moderate record.  Even if he were

14  a serious record, which I don't think he is, and I don't

15  think it overstates that when you take a look at his

16  youthfulness at the time of those offenses, but even

17  if it were a serious or repetitive, the guideline range

18  on that, six to 24, and you know, so I think the

19  Commonwealth overshoots the mark here with the three

20  to five years in State Prison, and I would ask you

21  to impose a time served sentence on the one count of

22  the ABDW.

23      THE COURT:  All right.  Let me ask either one of

24  you, is Mr. Wurie still subject to supervised release

25  on a potential violation on the federal side?

**EXHIBIT C**

1    MR. MILLER:  So, the answer to that question,

2  Judge, is there's a warrant out for him, I don't know,

3  and this is the reason why.

4    So, he had 38 months of supervised release, and

5  that he was released on September 16th of 2020, or --

6    MR. MURPHY:  '19.

7    MR. MILLER:  '19, I'm sorry, 2019.  So, his end

8  date on supervised release would have been November

9  16th of 2022.  The date of offense on this --

10    THE COURT:  Wait, wait.  Say that again?

11    Yeah, he was released on September 16th, 2019,

12  and he had 48 -- 48 months.

13    MR. MILLER:  38 -- 38.  I know that's odd, that's

14  an odd number, but that's what it is, it's 38 months

15  of supervised release.

16    THE COURT:  The judgement that you attached to

17  your sentencing papers says 48 months, and the docket

18  also reflects 48 months, --

19    MR. MILLER:  So, --

20    THE COURT:  -- the federal docket.  Let me just

21  see.  I tried to pull a copy of that because I can take

22  judicial notice of a docket in another related proceeding,

23  and it indicates that the sentence was originally --

24  excuse me 240 months, with five years of supervised

25  released, amended to 168 months with 48 months of

**EXHIBIT C**

1    supervised release.

2         MR. MILLER:  I had --

3         THE COURT:  I can give you a copy of what I pulled

4    and you can take a look at it if you'd like.

5         MR. MILLER:  So, I had the copy of the violation

6    notice from Probation, and that's what said 38 months

7    on it, and I thought that was strange, 38.

8         THE COURT:  That's not -- that's not before me,

9    and the docket that I pulled, such as it is, doesn't

10   reflect any violation notice.  So, let me just give

11   you a copy of this docket, I don't want to be the only

12   one holding it.

13        MR. MILLER:  Okay.

14        THE COURT:  I want you to have an opportunity

15   to take a look at it.

16        MR. MILLER:  I can hand this up.

17        THE COURT:  You've got a copy?

18        MR. MILLER:  I've got the warrant summons from

19   the District Court.

20        THE COURT:  Okay.  Just provide it to Mr. Murphy,

21   let him take a look at it first.

22        MR. MILLER:  So, where it says, "Amended sentence,"

23   on there.

24        THE COURT:  Thank you.

25   (Pause)

**EXHIBIT C**

1    THE COURT:  So, the Court issued a warrant to

2    issue.  What happened?

3    MR. MILLER:  He hasn't been in on it yet.

4    THE COURT:  Okay.  And why do you say that he

5    would not be subject to the supervised release?

6    MR. MILLER:  So, if it's 38 months, and I --

7    THE COURT:  But I'll hand this back to you.

8    MR. MILLER:  Okay.

9    THE COURT:  I don't think we need to make it a

10   part of the public record.  It appears to me given

11   the docket and the judgement that you've attached,

12   that that 38 is a typo, but I don't know, maybe there's

13   something in the record indicating that the docket --

14   that the duration of supervised release is further

15   reduced by 10 months.

16   MR. MILLER:  Well, I guess if it is 48, then

17   I'd say yes, it is a violation of supervised release.

18   If it's 38, then it's a little more difficult,

19   right, because the release date was 9/13 of 2019, 38

20   months would be 11/13 of '22, and the date of offense

21   here is the 25th, which would be after.

22   So, I think that that's -- there is a further

23   alleged violation on November 2nd where he failed --

24   either he had contact with the police, no charges,

25   anything like that, at Dorset Hall, and there's a

**EXHIBIT C**

1    federal condition is report any contact within 72 hours

2    to police -- with police to the Probation Officer.

3         My understanding is that he did that, and they

4    didn't issue a violation, that it was only after they

5    saw this case that they amended the violation order

6    for that time.

7         THE COURT:  Okay.  So, you think he may be subject

8    to a supervised release violation?

9         MR. MILLER:  He may.

10        THE COURT:  Okay.

11        MR. MILLER:  He may.

12        THE COURT:  And given --

13        MR. MILLER:  If it's 48 months he -- I think

14   it's definitely within the window, if it's 38 months,

15   then I think that's the subject of some litigation.

16        THE COURT:  Okay.  Mr. Murphy, do you have a

17   view on this?

18        MR. MURPHY:  Well, I have a certified copy of

19   the docket dated August 3rd of this year, and it states

20   48 months.

21        THE COURT:  Okay.  So, that's the same thing

22   I was looking at before I gave it to counsel.  Okay.

23        All right.  Mr. Wurie, before I decide on a

24   sentence, I'll hear from you if you want to address

25   the Court.  You don't have to say anything if you

**EXHIBIT C**

1   don't want to, but if you want to address the Court,

2   now would be the time to do that.

3          MR. MILLER:  No, Your Honor.

4          THE COURT:  Okay.

5

6                           SENTENCING

7

8          THE COURT:  I think that there is a good faith

9   dispute as to what the sentencing guidelines require,

10  but even assuming that the Commonwealth is right that

11  the guidelines are zero to 24 months for this particular

12  kind of a violation, I still think the sentence that

13  I'm inclined to impose is appropriate.  I don't think

14  I need to resolve that issue with respect to the

15  application of the sentencing guidelines.

16         The jury found that Mr. Wurie was guilty of assault

17  and battery by means of a dangerous weapon, specifically

18  a firearm, but not guilty of both unarmed robbery and

19  unlawful possession of a firearm.  I fully credit the

20  verdict of the jury, which at first blush may appear

21  inconsistent.

22         The trial evidence allowed the jury reasonably

23  to find that given the circumstances inside the liquor

24  store on that particular evening, November 25, 2022,

25  Mr. Wurie took the firearm from Tykent Rogers under the

reasonable belief that he, Mr. Wurie, was preventing

a greater harm by doing so, or was defending a third

party, his brother, but that he did not then have the

intent to deprive Mr. Rogers of the firearm permanently.

The jury also could have reasonably found that Mr.

Wurie's actions shortly after disarming him, specifically

striking Mr. Rogers in the head with the firearm in a

single blow while he was still -- Mr. Rogers was still

wrestling on the floor with Mr. Wurie's brother, was

unnecessary and gratuitous, maybe an overaction, but

not something that Mr. Wurie's brother would have been

entitled to do in self defense under the circumstances

given the nature of the tussling after they were on

the ground.

I say that because if there is a supervised

release violation that is pursued, the Federal Court

ought to have the benefit of those thoughts, which

is that the verdict was not a crazy one, that it was

reasonably supported by the evidence.

I also think that a sentence in excess of the nine

months time served is appropriate.  I'm going to impose

a sentence of 18 months in the House of Corrections, nine

months to serve, the balance suspended for two years.

I do this for a number of reasons.  I recognize

that the injury was minor, as the Commonwealth says,

1    did not require any real medical attention.  There was

2    a -- and I don't mean to under estimate any kind of

3    laceration, but it was relatively minor to Mr. Rogers'

4    head.

5        I don't think the aggravating circumstances that

6    were discussed by Mr. Murphy are in fact applicable here.

7    This was -- I don't think Mr. Wurie was a leader in

8    the context of what happened here very quickly in time

9    with he and his brother and one other person involved

10   with Mr. Rogers.

11       I suppose that the fact that Mr. Wurie was on

12   supervised release is a potential aggravating factor,

13   I guess it is, but I'm taking that into consideration

14   the fact that he was on supervised release, and imposing

15   a sentence more significant than what the defense is

16   asking for, and I don't think it's appropriate to impose

17   a period of three to five in State Prison.

18       And I don't think that the defendant's criminal

19   record is understated in this context, taking as I do

20   the guideline range that's suggested by the Commonwealth.

21       I recognize that Mr. Wurie is 44 years old.

22   I recognize that these actions were not anything that

23   was -- that were planned by Mr. Wurie, that they were

24   somewhat impulsive, but I also recognize that the

25   Federal Court required as a condition of supervised

**EXHIBIT C**

1  release that Mr. Wurie should have access to and should

2  complete an anger management program.  I don't know

3  if that's happened yet, but this seems to be something

4  that is reactive in the moment, and the offense of

5  conviction is a function of not being able to harness

6  those emotions in the moment.

7      The only condition -- although, I'll hear the

8  parties on this, what conditions I should set on the

9  period of -- the two-year period that I'm continuing

10  the balance of the sentence.

11      Certainly not committing another state, federal,

12  or local crime should be a condition, but I recognize

13  Mr. Wurie's significant changes in his behavior over

14  the time he was out on federal supervised release, the

15  fact that he was able to start a job, start a family

16  or restart a family, and be a significant asset to his

17  community and his family during that time period, and

18  so, I think that that is the only condition that jumps

19  out at me.

20      What do you think, Mr. Murphy?

21      MR. MURPHY:  I think first I'd request the standard

22  stay away no contact with the victim, stay away from the

23  liquor store, perhaps could set our own anger management

24  condition, and maintain employment, I think would be

25  a good idea.

**EXHIBIT C**

22

1    THE COURT:  So, maintain employment is something

2    that Mr. Wurie is going to do without the need for

3    the Court's intervention, but I think the stay away

4    no contact with Mr. Rogers makes sense, stay away and

5    have no contact with the liquor store also makes sense.

6         Anything else, Mr. Miller?

7         MR. MILLER:  No, I think that those are reasonable.

8         I guess I would object to the stay away no contact

9    with the liquor store.  I mean, that just happened to

10   be the location where it happened.

11   THE COURT:  It was, but, you know -- and I don't

12   have an extended period of video surveillance from

13   that evening, but the fact that Mr. Wurie was hanging

14   out outside with some friends, drinking is -- you know,

15   anybody can hang out outside, okay, a liquor store.

16   There's nothing unlawful about hanging out outside a

17   liquor store, but it's not the way one wants to turn

18   around one's life it seems to me, and so, I am going

19   to impose that condition, stay away no contact with

20   that location.

21        Anything else?

22        MR. MURPHY:  No.

23        THE COURT:  All right.  There are certain fees

24   associated with this.  There's a Victim Witness Fee

25   of $90.

**EXHIBIT C**

1          Are you appointed or retained, Mr. Miller?

2          MR. MILLER:  I was appointed.

3          THE COURT:  Appointed; okay.  So, there is a --

4          THE CLERK:  There were no fees assessed, Your

5   Honor.

6          THE COURT:  I'm sorry, there were no?

7          THE CLERK:  There was no counsel fee assessed.

8          THE COURT:  Oh, on counsel fee assessed?

9          THE CLERK:  No.

10         THE COURT:  Okay.  They'll be a DNA Fee, which

11  is $110, and there's a -- I think that's it, actually.

12         THE CLERK:  That's it, Judge.

13         THE COURT:  Yeah.  All right.  And those can be

14  paid over the period of the suspended portion of the

15  sentence.

16         Okay.  Anything else?

17         MR. MURPHY:  So, I don't know if it's within the

18  Court's discretion to do this, but that warrant that

19  he has out of Federal Court, if we could issue a recog

20  and have him get there tomorrow morning.

21         THE CLERK:  I don't have -- I don't have anything

22  to do with that, Judge, no numbers, nothing.

23         THE COURT:  What do you mean no numbers?

24         THE CLERK:  Well, we don't -- it doesn't even

25  show up in our system.

EXHIBIT C

1       THE COURT:  We don't have the warrant?

2       THE CLERK:  No.

3       THE COURT:  Yeah.

4       MR. MURPHY:  Here's the warrant.

5       THE COURT:  It says, "A warrant is to issue."

6       Is that the warrant itself?

7       MR. MURPHY:  Arrest warrant.

8       THE COURT:  It is an arrest warrant.  I have no

9   problem issuing a recog allowing Mr. Wurie to get to

10   the Federal Court by noon tomorrow.

11       MR. MILLER:  Okay.

12       THE COURT:  Okay.  And we can --

13       MR. MILLER:  He has the nine-months suspended

14   hanging over him here, and plus that would compound

15   the violation, at least --

16       THE COURT:  Sure.

17       MR. MILLER:  -- if he gets held on that.

18       THE COURT:  Sure.  And you know, I am imposing

19   this sentence with the understanding that he is subject

20   to a potential supervised release violation, and hopefully

21   this is -- takes that into consideration; okay.

22       MR. MURPHY:  Yes, okay.

23       THE COURT:  All right.  Mary, in terms of the

24   recog, do you need any information about that federal --

25       THE CLERK:  I will.  I don't have any information.

**EXHIBIT C**

1          THE COURT:  Okay.  Do you have the docket number

2     there?

3          THE CLERK:  So, I need an address.  I need a --

4          THE COURT:  Yeah.

5          THE CLERK:  -- all that good stuff.

6          THE COURT:  It's to go to the Federal Court over

7     at the Moakley Building, and the Docket Number is 07

8     -- let me get it for you, it's -- excuse me, 08CR10071.

9          THE CLERK:  08CR10071?

10          THE COURT:  Yes.

11          THE CLERK:  And it's the Moakley?

12          MR. MURPHY:  So, that's the docket number and

13     then the address.

14          THE COURT:  Right.  It's the Moakley Courthouse,

15     which is 1 Courthouse Way in Boston.

16          MR. MURPHY:  I'm not sure if I put down the right

17     zip code there, but --

18          THE CLERK:  But that doesn't matter.

19          THE COURT:  Okay.  So, you want to take this with

20     you, so that you have the recog in your hand --

21          MR. WURIE:  All right.

22          THE COURT:  -- so in case anything happens between

23     now tomorrow at noon.

24          MR. WURIE:  Thank you, Your Honor.

25          THE CLERK:  So, Your Honor, --

**EXHIBIT C**

1      THE COURT:  Okay.

2      THE CLERK:  Hold on.  Hold on.  We're not done.

3  Hold on.

4      PROBATION OFFICER:  He's going to need to see

5  Probation before he leaves.

6      THE CLERK:  Yeah, he's going to need a lot of

7  things.  Hold on.  All set, Your Honor?

8      THE COURT:  Yes.

9      THE CLERK:  Brima Wurie, the Court -- the jury

10  having returned a verdict of guilty as to Offense 003

11  charging assault and battery with a dangerous weapon,

12  the Court sentences you to be imprisoned at the Suffolk

13  County House of Correction at South Bay for a period

14  of 18 months, nine months to serve.

15      And that's deemed served; correct, Your Honor?

16      THE COURT:  Yes.

17      THE CLERK:  Balance suspended for two years of

18  probation.  You did have 281 days credit.  And the

19  conditions of probation are, you must not commit further

20  crimes, the standard conditions of probation do apply,

21  stay away no contact with the victim and the liquor

22  store and the incident.

23      The Victim Witness Fee of $90 is imposed, $110

24  DNA fee is also imposed, and that is payable during

25  your probationary period.  And you have a right to

**EXHIBIT C**

1    appeal your conviction pursuant to Rule 65 within

2    30 days.

3         And you stand discharged at this time.

4         MR. MURPHY:  Thank you, Your Honor.

5         THE COURT:  Good luck, sir.

6         THE CLERK:  So, there will be a bunch of paperwork,

7    so you need to stay.

8         MR. WURIE:  All right.

9         THE CLERK:  And see Probation before you leave

10   today.

11        COURT OFFICER:  All rise, please.

12   (Hearing Concluded at 3:39 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

### C E R T I F I C A T E

I, Susan M. Lobie, Certified Electronic Transcriptionist and Notary Public for the Commonwealth of Massachusetts, and a Court Approved Transcriptionist for Office Solutions Plus do hereby certify that the foregoing is a true and accurate transcript prepared to the best of my ability, from audio recordings of a Sentencing Hearing held on Tuesday, September 5, 2023, in the matter of <u>Commonwealth v. Brima Amadu Wurie, Jr., OKA Brima Wurie</u>, Docket No. 2384CR00127, before the Honorable Peter B. Krupp.

I, Susan M. Lobie, further certify that the foregoing is in compliance with the Administrative Office of the Trial Court Directive on Transcript Format.

I, Susan M. Lobie, further certify that I neither am counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

Proceedings recorded by electronic sound recording equipment. Transcript produced from computer.

*Susan M Lobie*  DATE: <u>October 16, 2023</u>

Susan M. Lobie, President
Office Solutions Plus
15 Marion Road
Salem, MA  01970
(617) 471-3510
<u>SueLobie@osptranscriptionservices.com</u>

Notary Public, Commonwealth of Massachusetts
My Commission Expires March 3, 2028

# EXHIBIT C



**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

**AUDIO ASSESSMENT FORM**

***For court transcribers:*** *Complete this assessment form for each volume of transcript produced, and include it at the back of very original and copy transcript with the certificate page, word index, and CD PDF transcript.*

**TODAY'S DATE:** 10/16/2023          **TRANSCRIBER NAME:** Susan M. Lobie

**CASE NAME:** Comm v. Brima Wurie, Jr., OKA Brima Wurie  **DOCKET NO:** 2384CR00127

**RECORDING DATE** 9/5/2023          **TRANSCRIPT INTERVIEW:** 1 OF 1

(circle one)  **TYPE:**  **(CD)**  **TAPE**   **QUALITY:**   **EXCELLENT**  **(GOOD)**  **FAIR**  **POOR**

(circle all that apply) **ISSUES** (include time stamp):

**background noise**                    **time stamp:** _____

**low audio**                                        _____

**low audio at sidebar**                          _____

**simultaneous speech**                          _____

**speaking away from microphone**          _____

**other:** _____          **time stamp:** _____

_____          _____

_____          _____

_____          _____

**COMMENTS:**          The audio for this transcript was fine. _____

_____

_____

**EXHIBIT C**

COMMONWEALTH V. BRIMA AMADU WURIE, JR, OKA BRIMA WURIE
DOCKET NO. 2384CR00127
SENTENCING HEARING - 9/5/2023

## $

**$110** [2] 23:11 26:23
**$90** [2] 22:25 26:23

## 0

**003** [1] 26:10
**07** [1] 25:7
**08cr10071** [2] 25:8,9

## 1

**1** [1] 25:15
**10** [1] 16:15
**11/13** [1] 16:20
**14** [1] 5:1
**14-year** [1] 5:4
**15** [3] 11:8 12:22 13:12
**168** [1] 14:25
**16th** [3] 14:5,9,11
**18** [2] 19:22 26:14
**19** [2] 14:6,7
**1996** [2] 5:21 7:18
**1996-97** [1] 4:18

## 2

**2003** [2] 4:21,22
**2007** [2] 4:24 5:6
**2008** [1] 4:24
**2019** [5] 5:2,6 14:7,11 16:19
**2020** [1] 14:5
**2022** [2] 14:9 18:22
**22** [1] 16:20
**2384cr00127** [1] 3:8
**24** [3] 6:15 13:18 18:9
**240** [1] 14:24
**25** [1] 18:22
**25th** [1] 16:21
**281** [2] 8:21 26:18
**2nd** [1] 16:23

## 3

**3:06** [1] 3:2
**3:39** [1] 27:12
**30** [1] 27:2
**38** [11] 14:4,13,13,14 15:6,7

16:6,12,18,19 17:14
**3rd** [1] 17:19

## 4

**44** [2] 13:3 20:21
**48** [8] 14:12,12,17,18,25 16:16 17:13,20

## 6

**65** [1] 27:1

## 7

**72** [1] 17:1

## 8

**85** [1] 5:11

## 9

**9.3** [1] 11:9
**9.336** [1] 8:22
**9/13** [1] 16:19
**90s** [1] 7:16

## A

**abdw** [3] 11:17 13:8,22
**able** [3] 12:12 21:5,15
**above** [1] 7:11
**accepts** [2] 11:16 13:8
**access** [1] 21:1
**accomplish** [1] 11:12
**account** [1] 10:4
**acquitted** [1] 4:22
**action** [1] 9:11
**actions** [2] 19:6 20:22
**activity** [1] 13:5
**actors** [1] 6:22
**actually** [1] 23:11
**address** [4] 17:24 18:1 25:3,13
**advisory** [1] 9:2
**afternoon** [4] 3:5,6,16,17
**aggravating** [6] 6:19 7:6,10 8:10 20:5,12
**aggressive** [1] 7:4
**agreed** [1] 13:7
**agrees** [2] 10:9,11

**albeit** [1] 9:2
**alleged** [1] 16:23
**allowed** [1] 18:20
**allowing** [1] 24:9
**already** [2] 7:8 8:5
**although** [1] 21:7
**ambitious** [1] 12:3
**amended** [3] 14:25 15:22 17:5
**amount** [1] 5:12
**anger** [2] 21:2,23
**another** [4] 7:10 12:16 14:22 21:11
**answer** [1] 14:1
**anybody** [1] 22:15
**appeal** [2] 9:23 27:1
**appear** [1] 18:18
**appeared** [1] 9:13
**appears** [1] 16:10
**applicable** [1] 20:6
**application** [1] 18:13
**applies** [2] 4:15 10:15
**apply** [2] 10:17 26:20
**appointed** [3] 23:1,2,3
**appropriate** [6] 8:12 9:1 13:6 18:11 19:21 20:16
**argue** [3] 9:8,23 11:14
**argument** [2] 9:25 11:24
**around** [2] 11:18 22:18
**arraignment** [1] 10:19
**arrest** [2] 24:7,8
**assault** [8] 6:13 7:17,18, 20,24 10:4 18:14 26:11
**assessed** [3] 23:4,7,8
**asset** [1] 21:16
**associated** [1] 22:24
**assuming** [1] 18:8
**assure** [1] 12:13
**attached** [3] 11:22 14:16 16:11
**attaches** [1] 3:21
**attention** [1] 20:1
**august** [1] 17:19
**away** [7] 21:22,22 22:3,4,8, 19 26:21

## B

**back** [4] 4:18 12:11,14 16:7
**bails** [1] 5:21
**balance** [3] 19:23 21:10 26:17
**base** [2] 10:13 11:7
**based** [5] 5:19 6:9,14,16 8:9
**basketball** [1] 12:18
**battery** [7] 6:13 7:17,20,24 10:5 18:15 26:11
**bay** [1] 26:13
**begin** [1] 4:17
**behavior** [1] 21:13
**behind** [1] 8:16
**belief** [1] 19:1
**believe** [5] 5:6 6:6 8:22,25 13:13
**benefit** [1] 19:17
**between** [1] 25:22
**big** [1] 9:5
**bit** [1] 12:10
**blow** [1] 19:8
**blush** [1] 18:18
**boston** [4] 4:24 7:19 8:1 25:15
**both** [3] 4:1,5 18:16
**brima** [2] 3:8 26:9
**brother** [5] 9:24 19:3,9,11 20:9
**building** [1] 25:7
**bunch** [1] 27:6
**business** [1] 12:15
**buy** [1] 12:20

## C

**calculation** [1] 5:25
**call** [2] 10:1 11:11
**candy** [1] 12:20
**car** [2] 8:2,2
**carrying** [1] 12:20
**case** [11] 4:22,24,25 8:4,5, 21 9:9,18 13:6 17:5 25:22

**EXHIBIT C**

COMMONWEALTH V. BRIMA AMADU WURIE, JR, OKA BRIMA WURIE
DOCKET NO. 2384CR00127
SENTENCING HEARING - 9/5/2023

cases [1] 6:5
categorization [1] 7:14
categorize [2] 9:9 10:3
certain [2] 9:23 22:23
certainly [5] 9:22 11:13,21
13:3 21:11
certified [1] 17:18
changes [1] 21:13
charge [1] 11:19
charges [1] 16:24
charging [1] 26:11
chart [1] 10:6
children [1] 13:4
circumstance [1] 9:12
circumstances [6] 9:8
11:16,18 18:21 19:12 20:5
class [2] 6:11 8:4
clear [1] 6:24
clearly [1] 9:15
clerk [22] 3:5,7 23:4,7,9,12,
21,24 24:2,25 25:3,5,9,11,
18,25 26:2,6,9,17 27:6,9
cocaine [1] 11:3
code [1] 25:17
co-defendant [2] 6:25 7:
3
come [1] 9:6
comes [1] 4:24
coming [1] 7:4
commission [1] 9:4
commit [2] 8:8 26:19
committing [1] 21:11
common [3] 11:24 12:16,
23
commonwealth [14] 3:8,
10,11 4:2,11 6:18 8:11,16
10:9,11 13:19 18:8 19:25
20:20
community [1] 21:17
company [1] 12:4
complete [1] 21:2
compound [1] 24:14
concluded [1] 27:12
concomitant [1] 11:2
condition [7] 17:1 20:25

21:7,12,18,24 22:19
conditions [3] 21:8 26:19,
20
consider [1] 11:23
consideration [2] 20:13
24:21
considered [1] 13:11
contact [8] 16:24 17:1 21:
22 22:4,5,8,19 26:21
context [2] 20:8,19
continues [1] 8:7
continuing [1] 21:9
convicted [2] 5:1 11:17
conviction [6] 4:20 10:23,
24 11:2 21:5 27:1
convictions [5] 6:10,11,
17 7:16 11:6
copy [6] 14:21 15:3,5,11,
17 17:18
correct [2] 4:4 26:15
correction [2] 4:18 26:13
corrections [1] 19:22
counsel [3] 17:22 23:7,8
count [1] 13:21
county [1] 26:13
courthouse [2] 25:14,15
court's [2] 22:3 23:18
crazy [1] 19:18
credit [2] 18:17 26:18
crime [1] 21:12
crimes [1] 26:20
criminal [6] 7:13,15 10:15,
21 13:5 20:18
custody [3] 4:16 8:7 12:11

D

dangerous [7] 6:13 7:17,
18,25 10:5 18:15 26:11
date [5] 10:19 14:8,9 16:19,
20
dated [1] 17:19
day [2] 4:21 7:23
days [3] 8:21 26:18 27:2
dealing [1] 12:17
decay [4] 4:14,15 5:22 10:

15
decide [1] 17:23
deemed [2] 10:21 26:15
defendant [4] 4:16 6:11,
21,24 7:4,9,19,21,25 8:6
defendant's [3] 6:17 7:14
20:18
defending [1] 19:2
defense [3] 9:18 19:12 20:
15
definitely [1] 17:14
definition [1] 10:7
deprive [1] 19:4
detained [1] 5:20
deterrent [2] 13:3,5
differently [4] 4:13 9:23
difficult [1] 16:18
disarming [1] 19:6
discharged [1] 27:3
discretion [1] 23:18
discussed [1] 20:6
disparagingly [1] 9:7
dispute [2] 10:14 18:7
distribution [2] 8:4 11:3
district [1] 15:19
dna [2] 23:10 26:24
docket [11] 14:17,20,22 15:
9,11 16:11,13 17:19 25:1,7,
12
dockets [1] 5:1
doing [2] 12:15 19:2
done [4] 5:24 6:7 9:11 26:2
door [1] 12:14
dorset [1] 16:25
down [1] 25:16
drinking [1] 22:14
duration [1] 16:14
during [2] 21:17 26:24

E

each [1] 12:24
eight [2] 5:22 10:19
either [2] 13:23 16:24
elder [1] 12:21
elements [2] 9:17,19

emotions [1] 21:6
employment [2] 21:24 22:
1
end [1] 14:7
entitled [1] 19:12
entries [1] 4:17
equally [1] 9:7
equivalent [1] 8:22
erase [1] 10:21
escalating [1] 7:5
essentially [1] 10:23
estimate [1] 20:2
even [4] 13:13,16 18:8 23:
24
evening [2] 18:22 22:13
everything [1] 9:14
evidence [3] 6:23 18:20
19:19
exactly [1] 10:8
excess [1] 19:20
excuse [2] 14:24 25:8
existed [1] 9:19
exit [1] 7:4
express [1] 8:15
extended [1] 22:12
extensions [1] 5:14
extenuating [1] 11:18

F

fact [7] 5:19 11:17 20:6,11,
14 21:15 22:13
factor [4] 7:6,10,12 20:12
factors [2] 6:19 8:10
failed [1] 16:23
faith [1] 18:6
family [4] 11:25 21:15,16,
17
far [1] 13:5
federal [22] 4:22,23 5:3,13,
14,15 7:9 8:4 10:24 11:1
12:5 13:25 14:20 17:1 19:
16 20:25 21:11,14 23:19
24:10,24 25:6
fee [6] 22:24 23:7,8,10 26:
23,24

SUSAN M. LOBIE, CET
Office Solutions Plus, 15 Marion Road, Salem, MA 01970
(617) 471-3510 - SueLobie@osptranscriptionservices.com
**Sheet 2**

**EXHIBIT C**

COMMONWEALTH V. BRIMA AMADU WURIE, JR, OKA BRIMA WURIE
DOCKET NO. 2384CR00127
SENTENCING HEARING - 9/5/2023

fees [2] 22:23 23:4
fight [1] 9:25
file [2] 4:3 6:2
filings [1] 4:1
find [1] 18:21
firearm [6] 9:17 18:16,17, 23 19:4,7
first [4] 6:21 15:21 18:18 21:21
five [6] 4:12 6:19 8:12 13: 20 14:24 20:17
fleeing [2] 7:22,25
flip [1] 8:25
floor [1] 19:9
follow [1] 9:3
football [1] 12:19
found [6] 6:11 9:15,19,20 18:14 19:5
four [5] 3:7 11:4,5,7 13:4
friends [2] 12:1 22:14
fully [1] 18:17
function [1] 21:5
further [3] 16:14,22 26:19
future [1] 13:5

**G**

gave [1] 17:22
gets [1] 24:17
girlfriend [1] 7:1
give [2] 15:3,10
given [5] 4:16 16:10 17:12 18:21 19:13
giving [1] 12:19
goals [2] 11:12 12:7
got [2] 15:17,18
gratuitous [1] 19:10
greater [1] 19:2
grid [1] 10:13
groceries [1] 12:20
groin [1] 7:21
ground [1] 19:14
guess [3] 16:16 20:13 22:8
guideline [3] 7:11 13:17 20:20
guidelines [15] 4:12 5:23,

24 6:20 7:15 9:2 10:3,6,18, 25 11:10 13:12 18:7,9,13
guilty [6] 9:16,16,20 18:14, 16 26:10
gun [4] 9:12,13 10:2 11:19
guy [3] 12:4,7 13:3

**H**

half [1] 4:19
hall [1] 16:25
hand [3] 15:16 16:7 25:20
hang [1] 22:15
hanging [3] 22:13,16 24: 14
happened [6] 7:2 16:2 20: 8 21:3 22:9,10
happens [1] 25:22
harm [1] 19:2
harness [1] 21:5
head [3] 7:20 19:7 20:4
hear [3] 4:9 17:24 21:7
heard [3] 4:6 8:14,18
hearing [2] 3:18 27:12
heat [1] 13:9
held [4] 4:23,25 8:23 24:17
history [3] 7:13 10:15,22
hit [2] 5:22 10:1
hold [4] 26:2,2,3,7
holding [1] 15:12
home [1] 12:20
honor [10] 3:5,7 8:18 18:3 23:5 25:24,25 26:7,15 27:4
hopefully [1] 24:20
hours [1] 17:1
house [3] 4:18 19:22 26: 13
however [2] 6:18 10:1

**I**

idea [1] 21:25
identified [1] 7:22
identify [1] 3:9
impose [5] 13:21 18:11 19: 21 20:16 22:19
imposed [2] 26:23,24

imposing [2] 20:14 24:18
imprisoned [1] 26:12
impulsive [1] 20:24
incident [3] 5:10,17 26:22
inclined [1] 18:11
inconsistent [1] 18:19
indicates [1] 14:23
indicating [1] 16:13
information [2] 24:24,25
initially [1] 7:3
initiate [1] 9:11
injury [5] 6:14 10:6,7 11: 15 19:25
inside [1] 18:21
intent [1] 19:4
intervention [1] 22:3
investment [1] 9:5
involved [2] 7:25 20:9
involves [1] 7:21
involving [1] 6:22
iron [2] 12:5,6
issue [5] 16:2 17:4 18:12 23:19 24:5
issued [1] 16:1
issuing [1] 24:9
itself [1] 24:6

**J**

jeff [1] 3:13
job [1] 21:15
judge [6] 6:2 8:20 13:11 14:2 23:12,22
judgement [2] 14:16 16: 11
judicial [1] 14:22
jumps [1] 21:18
jury [8] 9:15 11:17 13:7 18: 14,18,20 19:5 26:9
justify [1] 7:10

**K**

kicking [1] 7:21
kids [2] 12:18,18
killed [1] 8:3
kind [6] 5:13 9:14 12:9 13:

1 18:10 20:2
knife [1] 7:18

**L**

laceration [2] 6:15 20:3
ladies [1] 12:21
large [4] 4:17 5:21 8:6
largely [1] 7:17
last [1] 6:7
late [1] 7:16
later [1] 7:22
leader [2] 6:21 20:7
least [2] 11:1 24:15
leave [1] 27:9
leaves [1] 26:5
letters [4] 4:1 11:22 12:22, 24
level [9] 10:4,12,13 11:4,5, 5,7,7,7
life [2] 12:2 22:18
liquor [7] 18:21 21:23 22:5, 9,15,17 26:21
list [1] 3:7
litigation [1] 17:15
little [3] 4:13 12:10 16:18
local [1] 21:12
location [2] 22:10,20
longer [2] 12:8 13:2
look [5] 9:1 13:15 15:4,15, 21
looked [1] 6:9
looking [3] 5:23 7:16 17: 22
lot [1] 26:6
love [1] 12:17
low [1] 6:16
luck [1] 27:5

**M**

made [2] 9:4,5
maintain [2] 21:24 22:1
management [2] 21:2,23
mandatory [1] 9:3
many [1] 8:7
mark [1] 13:19

**EXHIBIT C**

COMMONWEALTH V. BRIMA AMADU WURIE, JR, OKA BRIMA WURIE
DOCKET NO. 2384CR00127
SENTENCING HEARING - 9/5/2023

**mary** [1] **24**:23
**matter** [1] **25**:18
**maximum** [1] **5**:12
**mean** [3] **20**:2 **22**:9 **23**:23
**means** [2] **5**:13 **18**:15
**medical** [1] **20**:1
**members** [1] **11**:25
**memo** [1] **3**:20
**memorandum** [1] **3**:21
**mentioned** [1] **7**:8
**michael** [1] **3**:11
**might** [1] **10**:20
**miller** [32] **3**:13,13 **4**:13 **8**:
18,20 **10**:10,12 **14**:1,7,13,
19 **15**:2,5,13,16,18,22 **16**:3,
6,8,16 **17**:9,11,13 **18**:3 **22**:
6,7 **23**:1,2 **24**:11,13,17
**minor** [5] **6**:14 **10**:6,7 **19**:
25 **20**:3
**moakley** [3] **25**:7,11,14
**moderate** [2] **11**:6 **13**:13
**moment** [3] **13**:10 **21**:4,6
**money** [1] **12**:19
**month** [2] **11**:14,20
**months** [27] **6**:15 **8**:22 **11**:
8,9,9 **12**:12 **14**:4,12,14,17,
18,24,25,25 **15**:6 **16**:6,15,
20 **17**:13,14,20 **18**:9 **19**:21,
22,23 **26**:14,14
**morning** [1] **23**:20
**most** [1] **13**:7
**much** [1] **5**:4
**murphy** [30] **3**:11,11,12 **4**:
4,7,8,9,11 **5**:6,9,15,19 **6**:9
**8**:15 **10**:16 **14**:6 **15**:20 **17**:
16,18 **20**:6 **21**:20,21 **22**:22
**23**:17 **24**:4,7,22 **25**:12,16
**27**:4
**must** [1] **26**:19

## N

**nature** [1] **19**:13
**necessary** [1] **12**:9
**necessity** [3] **9**:18,18 **11**:
18

**need** [9] **16**:9 **18**:12 **22**:2
**24**:24 **25**:3,3 **26**:4,6 **27**:7
**neighborhood** [1] **12**:17
**nine** [7] **11**:9,14,20 **12**:11
**19**:20,22 **26**:14
**nine-months** [1] **24**:13
**none** [1] **7**:2
**noon** [2] **24**:10 **25**:23
**nothing** [2] **22**:16 **23**:22
**notice** [3] **14**:22 **15**:6,10
**november** [3] **14**:8 **16**:23
**18**:22
**number** [9] **3**:7 **4**:23 **6**:10,
17 **14**:14 **19**:24 **25**:1,7,12
**numbers** [3] **6**:9 **23**:22,23
**numerous** [1] **4**:18

## O

**object** [1] **22**:8
**occurred** [3] **5**:10,17 **7**:6
**odd** [2] **14**:13,14
**offender** [1] **6**:12
**offense** [11] **6**:22 **8**:9 **10**:4,
13 **11**:4,5,7 **14**:9 **16**:20 **21**:
4 **26**:10
**offenses** [3] **7**:17 **8**:8 **13**:
16
**officer** [11] **3**:3 **6**:1,4,7 **7**:
20,21 **8**:1,2 **17**:2 **26**:4 **27**:
11
**okay** [31] **3**:12,15 **4**:5,9 **5**:8,
14,18 **6**:3 **8**:13,17 **15**:13,20
**16**:4,8 **17**:7,10,16,21,22 **18**:
4 **22**:15 **23**:3,10,16 **24**:11,
12,21,22 **25**:1,19 **26**:1
**old** [2] **13**:3 **20**:21
**once** [1] **12**:4
**one** [15] **6**:1,2,15 **10**:23 **11**:
6,13,24 **12**:2,24 **13**:21,23
**15**:12 **19**:18 **20**:9 **22**:17
**one's** [1] **22**:18
**only** [5] **6**:15 **15**:11 **17**:4 **21**:
7,18
**opportunity** [1] **15**:14
**order** [1] **17**:5

**originally** [1] **14**:23
**other** [1] **20**:9
**ought** [1] **19**:17
**out** [10] **7**:1,23 **12**:13 **14**:2
**21**:14,19 **22**:14,15,16 **23**:
19
**outside** [3] **22**:14,15,16
**over** [4] **21**:13 **23**:14 **24**:14
**25**:6
**overacted** [1] **9**:24
**overaction** [3] **9**:21 **13**:9
**19**:10
**overshoots** [1] **13**:19
**overstates** [1] **13**:15
**own** [2] **12**:4 **21**:23

## P

**p.m** [2] **3**:2 **27**:12
**paid** [1] **23**:14
**papers** [1] **14**:17
**paperwork** [1] **27**:6
**part** [4] **4**:17 **5**:21 **8**:6 **16**:10
**particular** [2] **18**:9,22
**parties** [2] **3**:9 **21**:8
**party** [1] **19**:3
**passenger** [1] **8**:3
**pause** [1] **15**:25
**payable** [1] **26**:24
**people** [4] **9**:4,7 **12**:1,25
**percent** [1] **5**:11
**perhaps** [2] **10**:14 **21**:23
**period** [9] **5**:15 **20**:17 **21**:9,
9,17 **22**:12 **23**:14 **26**:13,25
**permanently** [1] **19**:4
**person** [1] **20**:9
**person's** [1] **10**:21
**perspective** [1] **12**:15
**pile** [1] **3**:21
**place** [1] **12**:10
**planned** [1] **20**:23
**playing** [1] **12**:18
**please** [4] **3**:3,4,9 **27**:11
**plus** [3] **11**:14,20 **24**:14
**point** [2] **6**:19,20
**police** [7] **7**:19,20 **8**:1,1 **16**:

24 **17**:2,2
**portion** [1] **23**:14
**possession** [2] **9**:17 **18**:
17
**potential** [3] **13**:25 **20**:12
**24**:20
**preventing** [2] **7**:3 **19**:1
**prison** [4] **4**:12 **8**:12 **13**:20
**20**:17
**probably** [1] **13**:9
**probation** [12] **5**:24 **6**:1,4,
7 **15**:6 **17**:2 **26**:4,5,18,19,
20 **27**:9
**probationary** [1] **26**:25
**problem** [1] **24**:9
**proceeding** [1] **14**:22
**program** [1] **21**:2
**protection** [1] **13**:1
**provide** [2] **10**:7 **15**:20
**provision** [5] **4**:14,15 **5**:22
**10**:15 **11**:3
**public** [2] **13**:2 **16**:10
**pull** [1] **14**:21
**pulled** [2] **15**:3,9
**punishment** [3] **11**:13,15,
20
**purposes** [2] **9**:21,24
**pursuant** [1] **27**:1
**pursued** [1] **19**:16
**put** [1] **25**:16
**puts** [1] **11**:5

## Q

**question** [1] **14**:1
**quickly** [1] **20**:8

## R

**ran** [1] **4**:12
**range** [4] **6**:13 **7**:11 **13**:17
**20**:20
**reaching** [2] **9**:12,13
**reactionary** [2] **9**:9,10
**reactive** [1] **21**:4
**read** [1] **4**:1
**ready** [1] **4**:5

EXHIBIT C

COMMONWEALTH V. BRIMA AMADU WURIE, JR, OKA BRIMA WURIE
DOCKET NO. 2384CR00127
SENTENCING HEARING - 9/5/2023

real [1] 20:1
reason [1] 14:3
reasonable [2] 19:1 22:7
reasonably [3] 18:20 19:5, 19
reasons [1] 19:24
recog [4] 23:19 24:9,24 25:20
recognize [5] 19:24 20:21, 22,24 21:12
recommend [1] 8:16
record [12] 3:9 4:17 6:17 7:14,15 8:10 11:6 13:13,14 16:10,13 20:19
reduced [1] 16:15
reflect [1] 15:10
reflects [1] 14:18
rehabilitation [1] 12:9
related [1] 14:22
relating [1] 11:24
relatively [1] 20:3
release [18] 5:3 7:9 13:24 14:4,8,15 15:1 16:5,14,17, 19 17:8 19:16 20:12,14 21:1,14 24:20
released [6] 5:2,16 12:4 14:5,11,25
repetitive [2] 6:12 13:17
report [2] 7:19 17:1
request [1] 21:21
requesting [2] 4:11 6:18
require [2] 18:7 20:1
required [1] 20:25
resolve [1] 18:12
respect [1] 18:12
restart [1] 21:16
retained [1] 23:1
returned [1] 26:10
rise [2] 3:3 27:11
robbery [3] 9:16 11:19 18:16
rogers [10] 6:25 8:13 9:12, 25 18:23 19:4,7,8 20:10 22:4
rogers' [1] 20:3

routinely [1] 6:4
rule [1] 27:1

## S

same [1] 17:21
saw [1] 17:5
saying [2] 10:16,17
says [6] 10:5,20 14:17 15:22 19:25 24:5
score [1] 11:1
scores [1] 10:24
scuffle [1] 9:25
seat [1] 12:11
seated [2] 3:4,14
second [1] 7:8
see [7] 4:13 11:1,22 12:16 14:21 26:4 27:9
seeing [2] 12:18,24
seems [2] 21:3 22:18
self [1] 19:12
sense [2] 22:4,5
sent [1] 5:1
sentence [19] 5:4 8:11,24 9:1 11:14 12:5,8 13:2,21 14:23 15:22 17:24 18:10 19:20,22 20:15 21:10 23:15 24:19
sentences [3] 4:19 5:20 26:12
sentencing [17] 3:18,19, 20,21 4:6 9:6,22,24 10:13, 18 11:12,24 13:12 14:17 18:5,7,13
september [2] 14:5,11
serious [2] 13:14,17
seriousness [2] 7:13 8:10
serve [2] 19:23 26:14
served [6] 5:5 7:23 8:24 13:21 19:21 26:15
session [2] 3:2,4
set [3] 21:8,23 26:7
shall [3] 10:19,20,21
shortly [1] 19:6
shot [1] 8:2

show [2] 6:23 23:25
side [2] 5:13 13:25
significant [3] 20:15 21:13,16
since [3] 4:17 5:21 8:22
single [1] 19:8
sir [1] 27:5
situation [1] 7:5
six [1] 13:18
someone [1] 7:19
somewhat [1] 20:24
sorry [3] 10:10 14:7 23:6
south [2] 4:24 26:13
specifically [3] 4:14 18:15 19:6
squarely [1] 11:10
stabbed [1] 7:19
stand [2] 8:16 27:3
standard [2] 21:21 26:20
start [2] 21:15,15
started [2] 9:15 12:4
starting [1] 3:10
state [6] 4:12 8:12 11:4 13:20 20:17 21:11
stated [1] 8:6
states [1] 17:19
stay [8] 21:22,22 22:3,4,8, 19 26:21 27:7
steps [1] 12:13
still [4] 13:24 18:10 19:8,8
store [8] 7:1 18:22 21:23 22:5,9,15,17 26:22
strange [1] 15:7
striking [2] 8:1 19:7
stuff [1] 25:5
subject [5] 13:24 16:5 17:7,15 24:19
submit [1] 6:23
submits [1] 8:11
sufficient [2] 11:14,20
suffolk [4] 4:20,25 7:24 26:12
suggested [1] 20:20
summons [1] 15:18
superior [3] 4:20,25 7:24

supervised [20] 5:3,16,20 7:9 13:24 14:4,8,15,24 15:1 16:5,14,17 17:8 19:15 20:12,14,25 21:14 24:20
supplemental [1] 3:20
support [1] 11:23
supported [1] 19:19
suppose [1] 20:11
surprisingly [1] 6:16
surrounding [1] 11:16
surveillance [1] 22:12
suspended [4] 19:23 23:14 24:13 26:17
system [1] 23:25

## T

terms [4] 4:6 5:14 13:4 24:23
there's [8] 10:14 13:1 14:2 16:12,25 22:16,24 23:11
they'll [1] 23:10
third [2] 7:12 19:2
thoughts [1] 19:17
thread [1] 12:16
threads [2] 11:25 12:23
three [15] 4:11,21,21 6:18, 19 7:23,23 8:9,11 10:13 11:5,7,8 13:19 20:17
throughout [1] 12:24
throwing [1] 12:19
today [3] 3:8 6:18 27:10
together [1] 13:11
toll [1] 5:22
tolled [1] 12:23
tomorrow [3] 23:20 24:10 25:23
took [1] 18:23
treated [1] 9:7
trial [1] 18:20
tried [1] 14:21
try [1] 9:5
turn [1] 22:17
tussling [1] 19:13
twelve [1] 5:7
two [5] 4:19 6:22 11:6 19:

EXHIBIT C

**COMMONWEALTH V. BRIMA AMADU WURIE, JR, OKA BRIMA WURIE**
**DOCKET NO. 2384CR00127**
**SENTENCING HEARING - 9/5/2023**

23 **26**:17

**two-year** [1] **21**:9
**tykent** [1] **18**:23
**type** [1] **10**:14
**types** [1] **6**:10
**typo** [1] **16**:12

## U

**unarmed** [1] **18**:16
**under** [3] **18**:23 **19**:12 **20**:2
**understanding** [2] **17**:3
 **24**:19
**understate** [1] **7**:15
**understated** [1] **20**:19
**understates** [1] **7**:13
**unfolded** [1] **9**:14
**uniformity** [1] **9**:6
**union** [1] **12**:6
**unlawful** [2] **18**:17 **22**:16
**unnecessary** [1] **19**:10
**until** [1] **5**:9
**up** [5] **5**:9,17 **9**:6 **15**:16 **23**:
 25

## V

**vehicle** [1] **8**:1
**verdict** [4] **13**:9 **18**:18 **19**:
 18 **26**:10
**victim** [5] **6**:25 **21**:22 **22**:24
 **26**:21,23
**victim's** [1] **7**:3
**video** [1] **22**:12
**videos** [1] **6**:24
**view** [1] **17**:17
**violation** [12] **13**:25 **15**:5,
 10 **16**:17,23 **17**:4,5,8 **18**:10
 **19**:16 **24**:15,20
**violent** [4] **6**:12 **7**:17 **8**:8,9

## W

**wait** [2] **14**:10,10
**walked** [1] **7**:1
**walks** [1] **12**:2
**wants** [1] **22**:17
**warrant** [10] **14**:2 **15**:18 **16**:
 1 **23**:18 **24**:1,4,5,6,7,8

**way** [3] **9**:15 **22**:17 **25**:15
**weapon** [7] **6**:13 **7**:18,18,
 25 **10**:5 **18**:15 **26**:11
**whatever** [2] **8**:16 **10**:1
**whether** [2] **5**:20 **10**:15
**will** [2] **24**:25 **27**:6
**window** [1] **17**:14
**wish** [1] **8**:13
**within** [5] **11**:10 **17**:1,14 **23**:
 17 **27**:1
**without** [1] **22**:2
**witness** [2] **22**:24 **26**:23
**worked** [1] **12**:1
**worker's** [1] **12**:6
**working** [2] **12**:5,6
**wrapping** [1] **5**:16
**wrestling** [1] **19**:9
**wurie** [24] **3**:8,13,15,17,20
 **8**:21 **9**:11 **13**:24 **17**:23 **18**:
 14,23 **19**:1 **20**:7,11,21,23
 **21**:1 **22**:2,13 **24**:9 **25**:21,24
 **26**:9 **27**:8
**wurie's** [4] **19**:6,9,11 **21**:13

## Y

**year** [1] **17**:19
**years** [14] **4**:12,19,23 **5**:1,
 22 **8**:7,12 **10**:19 **13**:3,20 **14**:
 24 **19**:23 **20**:21 **26**:17
**yourselves** [1] **3**:9
**youthfulness** [1] **13**:16

## Z

**zero** [4] **6**:15 **11**:8 **13**:12 **18**:
 9
**zip** [1] **25**:17

SUSAN M. LOBIE, CET
Office Solutions Plus, 15 Marion Road, Salem, MA  01970
(617) 471-3510 - SueLobie@osptranscriptionservices.com
**Sheet 6**

**EXHIBIT D**

Exhibit One

August 15, 2023

Honorable Peter Krupp
Suffolk County Superior Court
3 Pemberton Square
Boston, MA 02108

RE: Brima Wurie

Dear Honorable Peter Krupp,

My name is Cynthia Martinez, I am currently a constable for the City of Boston-Inspectional Services Division, small business owner and the mother of Brima's youngest child, Bryson.

During the time that I've known Brima I have come to know him as a compassionate and responsible person. Brima had been working hard to stay busy and out of trouble. He enrolled in a program (Building Pathways) that helped him pick a trade and enter a local union as an iron worker. During that process I witnessed him wake up early mornings to get to class and stay up late nights to study and I couldn't have been more proud of him.

In the last 4 years, Brima grew a love for property management. Together we started a Business named Do It All Management, LLC. He stated small by helping neighbors in his own community with handy maintenance repairs to homes and businesses. We kept track of all contracts and submitted invoices. During these trying times I have managed to keep most contracts that have been started by Brima in hopes of his soon return.

The Building Pathways program and Do It All Management have been a big accomplishment for him and a stepping stone in the right direction. Brima is a kind and considerate individual who is always willing to lend a helping hand to others. I have seen him always gone above and beyond to ensure that everything runs smoothly whether it be with the business or our family.

Brima's ultimate focus has and still is to be able to provide for his family and be the best possible father. Bryson is growing every day and missing out on his dad. I am confident that Brima has learned from this experience and will continue on the path of growth with a strong support system in his family and including myself. I hope that this letter provides a better understanding of Brima's vision for his future and that you will consider it when making your decision.

Sincerely,
Cynthia Martinez

**1**

# EXHIBIT D



On this day Brima was completing a test given by building pathways. The picture was
Taken in admiration of his determination to see the program to the end.

**EXHIBIT D**

Exhibit Two

Dear Honorable Peter Krupp,

I write you this letter as an actively involved member of my community as well as many others. As a sociologist, I focus on advocating for members of communities with low socioeconomic status as well as adolescents of the minority. Additionally, I serve as administration at a predominately Black and Brown school serving young scholars who reside in communities like the one I grew up in and preparing them for college. Specifically, I am a Dean of Students serving adolescents who have lack of resources, trauma and lack of support at home.

As an actively involved member of my community, I have a great deal to convey about Brima Wurie. I have known Brima for a little over three years, meeting him through Brima being active within his community. Brima is known to the community to be respectful, fun, caring and helpful. He has great relationships with neighbors of the community and often spends his time in the community conversing and connecting with others. The children around the neighborhood love Brima. In fact, Brima has an encouraging mentor/mentee relationship with most children around. You often see the kids in the community give Brima a handshake as they walk to the store, on their way to the park or on their way home from school. During these times, Brima often gives them words of encouragement such as "I hope you're keeping your grades up" or  "I hope you guys are doing well in school". He motivates the children in this neighborhood to be their best self and to make good decisions.  During the summer time, or when the weather is nice you may also see Brima playing basketball with the children in the community or playing catch with the football.  This really brings joy to the kids around and encourages them to continue to be kids (these days not many kids want to do "kid things"). Brima often gives the children of the community money when he can for snacks or lunch but always makes sure that it's okay with the families first.

Brima is one of the most caring and helpful people I know in the community. I've witnessed him carry groceries for individuals, especially those of the elderly walking home from the grocery store. He's done that for my family plenty of times. Brima does little things that matter such as helping take out the trash or putting the trash bins away after trash pickup and even opening the neighbors driveway gate for them to park. He is a very considerate, reliable and helpful person who offers to help prior to someone even asking. Brima has goals to better his community such as creating a safe space for children like his, to have fun and get academic support. Also, he has goals to improve our community parks so that they are better equipped and make our children feel safer as well. Brima is a thoughtful and considerate person serving as a role model to many.  Brima has even motivated me to be my best self and has helped me in many ways. Since I have met him, he has always motivated me to take on challenges and to always try my best. As someone in administration at a predominately black and brown school and who manages discipline, Brima has reminded me to be my students' biggest support system always. He widened my perception of situations that occur and reminded me to be understanding as that's how I would build stronger relationships. Finally, Brima taught me that in my position, sometimes discipline is necessary yet it is always necessary to consider the precipitating factors that may cause certain situations to occur. He has reminded me that even when times are hard, children from communities like ours need us for guidance and support. I appreciate Brima for his guidance as I feel he has made me a better person and better Dean as well.

Notably, Brima is a present dad. He loves all of his children and he makes the world know it. In communities like ours, many children lack present fathers and/or positive father figures in their life. In

**3**

**EXHIBIT D**

fact, growing up I wish I had a father figure like Brima. This is a man that cares about his kids and will always make sure they are all set. I would describe Brima as family oriented. He loves his family and enjoys spending time with his family. A typical interaction of Brima and his family would be spending time with each other on Sundays after church, eating, laughing and socializing.

I understand that Brima has made mistakes in the past but those mistakes do not define who he is as a person. He has come a long way over these past years and is a great part of our community. Brima has started his own business and has created great relationships through his reliability and work ethic. Brima has high expectations for himself and others and wants to see everyone in his community be successful. He has always sought out to better himself and to better his community as well. Brima wants everyone to do well in life and has served as a support system for many. Brima's character is defined as supportive, caring, beneficent and charitable which expresses why he is such an important component to our community. He has been missed and the community has not been the same without his presence. Thank you for your time and consideration of this letter.

Sincerely,

Janelle Watty

Janelle Watty  M.A
Applied Sociologist
Dean of Students

**4**

**EXHIBIT D**

Exhibit Three

Kathleen Carvalho
Providence, RI 02908

24th August 2023

Dear Honorable Peter Krupp,

I hope that this letter finds you in good health.

I hope my letter may have a favorable impact on Brima's sentencing determination primarily for the impact that it can have for his children who may have an opportunity to benefit from as much meaningful, in-person time as possible with their father. I am currently a healthcare administrator at a clinical trials company and possess an extensive background in behavioral health and addiction services. I've worked at The Dimock Center and Boston Medical Center supporting many who have spent time within DOC and are at various points of transition. Throughout my career, I have partnered with DOC and have seen first hand the capacity for change possible when appropriate family support systems are in place.

More personally, I've assisted my own brother with his issues with alcoholism which has resulted in years of consistent and gainful employment and significant and impactful interactions with my nieces and nephew. Additionally, as a mother to young children I cannot stress the importance of ensuring that fathers are present during these intervening years. His children, his mother, his father, and his partner need Brima in the home to move forward and help him become a positive and conductive member of society. That is best facilitated from home.

In the nearly two decades that I've been friends with Brima, he's always been the consummate family man. Maybe at times, to a fault. He is staunchly supportive and protective of those with whom he holds close. We live a state away from each other and there is not a favor that I could ask of him that he would not fulfill. I've watched him rebuild himself upon his release and work to gain new skills. Prior to his arrest he had a fledgling property management company that he started from the ground up.

Brima is well-surrounded and capable of continuing to establish himself as a productive member of society. Prior to his incarceration and subsequent trial, Brima was working on starting his own business and starting a legacy which could be left to his children. He made great strides re-establishing his relationship with his daughter who is at a critical age and I am of the opinion that Summer's future success will be determined in large measure on the meaningful interaction and involvement that Brima will have in her life in the upcoming years. For at least three of his children, Brima is a key source of financial support and there are far reaching social impacts which will follow an elongated sentence.

Sincerely,

Mrs. Kathleen Carvalho

**5**

EXHIBIT D

Exhibit Four

August 21, 2023

The Honorable Peter Krupp
Suffolk County Superior Court
3 Pemberton Square
Boston, MA 02108

Dear Judge Krupp,

My name is Brima Wurie Senior. I am writing to you regarding my son Brima Wurie Junior whose matter/case is before your court at present.

Brima Wurie Junior commonly called BJ is from a very stable family. His mother Marilyn Wurie and I have been married for 50 years. His mother is a retiree from Hanscom Air Force Base and so I am from the Massachusetts Institute of Technology. My years of service started at the Department of Civil and Environmental Engineering as Graduate Admissions Officer. I later became an Assistant Dean for Student Affairs and International Students. Finally, I was the Director/Administrator for Graduate Fellowships and Grants, Office of the Dean for Graduate Education before my retirement. I am a recipient with a Bachelors degree from American International College and a Masters degree from Boston State College.

My wife and I have 5 wonderful children. Khadi Wurie, a graduate from Wellesley College, Nicholle Wurie, Suffolk University, Julie Wurie, University of Massachusetts, Lowell, Brima Wurie and Brandon Wurie a graduate from American International College.

It is no secret my son Brima has a past but that is not who he is today. Today he is a brave, courageous and reliable businessperson. He took what he had learned and stated his own maintenance company called " Do it all maintenance". He drafted a maintenance proposal for State Financial Services and landed a contract with them. "Do it all maintenance, LLC" now oversees day –to -day operations of the maintenance department and provides estimate cost of the jobs and projects. He is a loving father of 4 with the youngest one and a half years old. He is always willing to give his last to help someone in need. His children looks up to him.

Thank you for your time and consideration.

Sincerely,

Brima Wurie Sr.

**6**

**EXHIBIT D**

Exhibit Five

Dear Honorable Peter Krupp,

My name is Brandon Wurie and I work within the Boston Public School district as a one to one working with children with special needs. I have been in the school system for about ten years and I enjoy working with this population of students on a one to one basis. The students I work with require more patience and attention during their daily activities. I am also consistently in the neighborhood and interacting with Brima on a daily basis.

Brima Wurie is my older brother. I have known Brima my whole entire life. Brima and I have a very close bond and he is like my best friend. People would describe us as inseparable. My brother spent some time away from home as I was growing up. We grew up close so the time apart was hard on me. Despite the distance apart, we remained close and communicated often. When Brima came home a few years back, I was extremely happy to see my brother back home. The whole family was filled with emotions and happiness as we have been apart for a while. We held a welcome home party for him and celebrated his return back to the outside world. A lot of people came out to celebrate my brother and it was a good time. During his time home, my brother has changed significantly. I noticed his focus transitioned into spending time with his growing family and creating bonds. Additionally, he made it his mission to guide his oldest child in the right direction. Brima also loves hard. He cares about his family and values the relationship he has with his family and friends. People naturally gravitate to Brima because of the natural traits that he has and his personality. He is funny, genuine and just a good person to be around. Brima also has great relationships with the young boys around our neighborhood. On days when the weather is nice, you can find us throwing the football around with the kids, having water balloon fights and enjoying our time outside. He also constantly encourages the kids around to do well in school.

My brother is also work oriented. When Brima came home he got into construction and completed a program to become an ironworker. He worked really hard during this process and upon completion I could tell he was just as proud of himself as we were. I remember feeling his emotions when he gave his speech upon receiving his certification. It was definitely an experience to remember. Additionally, my brother created his own business. He pursued property management and worked maintenance for many properties. My brother is one of the most ambitious people I know. He has a will to get things done despite what obstacles he may face in the process. Brima also cares about people in our community. I've witnessed him encourage others to work for him by means of trash clean up or small jobs that required heavy lifting. This was his way of getting people off the streets and getting those who don't have much financially, access to a paid opportunity. To conclude, Brima Wurie has made a huge impact on my community. Specifically, he has positively influenced many children in our neighborhoods as well as adults including myself as his younger brother. As a brother, I support Brima in his many accomplishments he has made and congratulate him on his success in changing his life. He really did transition his life for the better. Thank you for your time.

Sincerely,

Brandon Wurie

Brandon Wurie
Paraprofessional
Brockton Public Schools

7

**EXHIBIT D**

Dina Rudick
75 Capen Street
Medford, MA 02155

 Exhibit Six

August 25, 2023

To The Honorable Peter Krupp;

I am writing this letter as a character support and testimony on behalf of Brima Wurie, whose matter is before the court at present.

I cannot speak to the current circumstances of his arrest. I can, however, tell you of the person I know, and about our revealing and meaningful interactions since we met on a film set in Dorchester.

I am an independent filmmaker and own, and was formerly a journalist at the Boston Globe for 16 years. Last summer, we were filming in the Geneva Bowdoin neighborhood of Dorchester, and that is where I met Brima for the first time.

The story we were filming was about a young man who was an innocent victim of gun violence, which is a horribly common story in Geneva Bowdoin. We were outsiders in the neighborhood, which was humming with activity and traffic. As we went about our filming process, Brima approached, curious and courteous, and asked what we were filming.

It turned out that Brima knew the family of the victim, and shared his own story of deep connection to the neighborhood. He took it upon himself to help us at every turn of our shoot - to introduce us to the local residents, to help us navigate and execute complicated camera choreography, and was just an enthusiastic and warm presence throughout.

We stayed in touch after that shoot and spoke often. Brima told me about his troubled youth, his large and loving family, his children, his partner, his business and dreams for the future. In him I saw an inspiring soul - a person with incredible gifts who succumbed early to dark forces, but has meaningfully stepped with purpose again and again toward what he grew to value most.

Brima told me many times that he wants to help his neighborhood heal - that he wants to help young men avoid the trap he fell into as a teen. And it's not idle talk; he's built a thriving business in which people depend on him, he has a beautiful relationship with his partner Cynthia and a young child who looks up to him. I saw clearly the love and respect his peers have for him during that summer evening in Dorchester. He has become a role model for many in the community.

Brima cannot erase his youth. But if he's forever trapped by echoes of previous folly, we as a society stand to lose a powerful example of redemption and potential, of strength and healing, of who we can be if we're allowed to embrace our light and not be defined by the dark.

Again, I can't speak to the legal circumstances, but I urge you to take a close look at his case. There are many sides to the story for certain.

I thank you for your consideration.

Sincerely,

Dina Rudick

**8**

EXHIBIT D SEVEN



**From:** Vincent Foxx Jr vincentfoxxjr@gmail.com
**Subject:** Brima Wurie
**Date:** August 25, 2023 at 2:19 PM
**To:** jmiller@millercriminaldefense.com

To The Honorable Peter Krupp.                    My name is Vincent Foxx. I have been working for EVERSOURCE energy for 18 years. I've worked in detention youth centers and had my own youth organization on making that you understand that they can make their dreams come true If they work hard and stay away from the foolishness. The organization also included trips, basketball tournaments, cookout, etc..                               I've known Brima since he was in the six grade. I've always liked him. He was always a good kid. Our relationship further when he attended the same high school Reading Memorial high school as me. He's funny, peaceful, and a good man at the core. Brahmas two older sisters also attended Reading Memorial high school and he has a good family structure.

Brianlil was never a problem starter. In fact he was quite the opposite. He would bring peace to a situation or sit back and be the bigger person Brahma having his freedom will make him a better person. He deserves a chance to prove to society, his family, and most importantly himself that he can do that.                    Sincerely, Vincent Foxx

**9**

EXHIBIT **D**

Exhibit Eight



**From:** Delsin Grubbs delsin.grubbs@gmail.com
**Subject:** Brima Wurie
**Date:** August 25, 2023 at 11:44 AM
**To:** jmiller@millercriminaldefense.com

Good morning Your Honorable Judge Peter Krupp,

My name is Delsin Grubbs and I have been a friend of Brima Wurie since we were in the METCO program in 2nd grade. (1986)  I attended the University of Rhode Island on an athletic scholarship and maintained contact with Brima and his family throughout the years.

Brima is an intelligent person who has overcame adversity and was on the right track.  He was employed by the Local 7 Ironworkers union and even assisted me when I needed help obtaining a new copy of my SS card and birth certificate.  I attended his youngest child's baby shower last September and seeing the joy on Brima's face let me know that he was continuing on the right path.

I will continue to support Brima because I know the potential he holds within.  Thank you for you time and consideration.

Regards,
Delsin Grubbs


(please make any edits that are necessary)

**10**

**EXHIBIT D**

Exhibit Nine

To Honorable Peter Krupp,

My name is Elijah Judge and I am currently working as a construction worker throughout the Boston area. I am writing this letter in support of Brima Wurie. I have known Brima Wurie my entire life. We grew up within the same community and Brima played the role of a big brother to me. Brima and his family became my family as a young child.

Brima was not around for a while and when he returned I noticed a change in his daily life. Brima was already a father and then he became a dad to three more children. Brima's attention has been focused on the wellbeing of his children and being the best dad any father would want to be. His children love him and he loves them. There is a special bond between him and his children but also between Brima and his family. Brima has close relationships between his family and friends and wishes the best for each and every one of them. I would describe Brima as a good man and a good friend.

Brima has also worked in construction like myself and is who encouraged me to get into this work to begin with . He worked as an ironworker and encouraged me to get into a similar field. He was like a mentor to me and educated me on what I needed to know before holding a construction position. Even while working in construction Brima created his own maintenance business. He told stories about the projects he would complete and often times offered people around the area job opportunities such as trash pick up. He was willing to help people in the neighborhood who were less fortunate. Brima has positively affected our community in many ways. Also, Brima had goals to better our community. He wanted to create a safe place for the kids around the neighborhood after school to keep them off of the street. He often talked about buying and renting out a space in the neighborhood and building a center for kids to have fun. Brima is a good person and puts other people before himself. Especially his children and the kids who live around our neighborhood.

Thank you.

Respectfully,

*Elijah Judge*

Elijah Judge

**11**

# EXHIBIT D

From: AWUDO, MAWUENA K JR A1C USAF ACC 102 LRS/LGRM mawuena.awudo@us.af.mil
Subject: Regarding Letter Writing for Brima Wurie's Sentencing
Date: August 25, 2023 at 11:29 AM
To: JMILLER@MILLERCRIMINALDEFENSE.COM



Mawuena Awudo Jr.
25 White Street
Quincy, MA, 02169

Exhibit Ten

August 25, 2023

To The Honorable Peter Krupp,

    I am righting on behalf of Brima Wurie Jr., 24, I am a proud member of the Massachusetts Air National Guard of the 102ND Intelligence Wing. I am also a college graduate of Albertus Magnus College in New Haven, Connecticut and a current student at the University of Massachusetts, Lowell obtaining a master's degree in criminal justice. On the outside of being part of the military, I work as a carpenter under my father's construction company, Smith & Awudo Construction Inc.

    I have known Brima Wurie Jr. for 24 years and he is my eldest uncle on my mother's side. Over the years of knowing him, I have seen a dramatic growth and major improvement in work life, as well as personal life. He is a very upstanding and giving Samaritan with a huge heart. In times of need, I can count on my uncle to be there for me and others. His charisma and reverence gravitate people which leads him to having long lasting friendships and a strong support from his family members.

    My admiration for my Uncle Brima is very authentic and genuine because of how considerate he is. On numerous occasions, my Uncle Brima has taken time out of his day to give me numerous amounts of haircuts. It takes a special and reluctant person to tell me that he is going to drive an hour away to give me haircut even when the time is 5:00 pm in Boston. Nevertheless, my uncle is an epitome of integrity first, service before self, and excellence in all we do.

V/r,

Awudo, Mawuena, K. A1C, MA ANG
Materiel Management
102d Intelligence Wing
COMM: 857-334-3124
Email: mawuena.awudo@us.af.mil

**EXHIBIT D**

Exhibit Eleven

To the Honorable Peter Krupp,

My name is Mark Stakem and I am a real estate agent working in MA.  I was born in Reading MA and attended Reading schools thru high school before attending Boston University and graduated in 2001.

I first met Brima when we were in middle school and instantly became friends.  He had a charisma and energy that shined to all that know him.  Brima has always been a trusted and fiercely loyal friend to those that have entered his life.  Many years have passed since we first met and as life progressed we don't get to see each other as much as I would've hoped.  The last time we spoke I could hear how starting a family has immensely  changed his life for the better.

Brima has grown a lot since our days back in middle school.  I know it hasn't been the smoothest ride for him but it is my hope that Brima will get a chance to raise his kids and to continue providing for them in the future.  I was saddened to hear of the situation he is currently in and hope there is a resolution that can reunite him with his family and friends.  Thank you for your time in reading this letter.

Sincerely,

Mark Stakem

**EXHIBIT D**

*Exhibit Seventeen*

Dear Honorable Peter Krupp

My name is Charles Joseph Israel (CJ). I'm a recent graduate of Curry College majoring in Business Management. I own and operate a clothing line called Black Matches Everything (BME) that I began in 2012 when I was 12 years old. I created the clothing line during a time of some racial tensions in a town where I attended school through the METCO program (Concord Ma). The name stood for/stands for many things, but in that moment, it stood for acceptance and equality among/despite our differences. I've held part time or full time employment for 7years, participated in paid internships for the City of Boston and the Commonwealth of Massachusetts, and set to partake in an internship with Google at the end of this school year.

I'm writing this letter on behalf of Brima Wurie, who has been a close family friend for years.. During our time spent, he's only spoken positivity in my life and has supported my business by purchasing merchandise and showing up at events (pop up shops etc.). He and I discussed owning businesses as a corporation/LLC. He's very bright and business savvy.

As an entrepreneur specializing in urban wear for a younger target market, I don't expect to get good advice from someone twice my age (haaa!), but he's been helpful giving input on ideas and always encouraging me to keep up the good work. I hope the court grants his release

Thank you for taking time to read this.

Have a good day

Charles Joseph Israel (CJ
Black Matches Everything (BME)
https://www.blackmatcheseverything.com/

**14**

**EXHIBIT D**

# Exhibit Eighteen

Honorable Peter Krup
Suffolk County Superior Court
3 Pemberton Street
Boston MA

My name is Marilyn Wurie, I am Brima Wurie's Jr,'s mother and I reside at 51 Speedwell Street, Dorchester, MA. for over 30 years. I worked for the Federal government for 23 years as an executive secretary and retired in 2019. Since my retirement I joined the Grove Hall Senior Community Center where I enjoy lots of activities, including arts and crafts, as well as outings. I am also an active member of St. Patrick Roman Catholic Church in Roxbury, MA. All of my five kids were baptized there, including Brima Junior. I am very active in my church as a lecturer and Social Sunday organizer. My kids all attended the METCO program, graduated high school, and four went on to graduate college. Colleges included Wellesley College, Suffolk College, University of Massachusetts Lowell, and American International College.

Brima was raised in the home with his other siblings and did good in his early years. He was active in sports - football, basketball and track and field. He has always been protective of his siblings, especially his younger brother. He started to work early with the city when he was 14 years and continued until his later teenage years. He was always well liked by his peers, adults and his supervisors with whom he interacted and worked with.

**EXHIBIT D**

Brima was always an honest child when he was growing up with me and my husband.  He was always willing to help others even if he didn't know them.

Brima was doing very well these past few years since he came home. He kept busy working and even started his own business. He graduated from a program and worked as maintenance manager for some buildings on Huntington Avenue. He then worked with the Iron Workers Union. After the Iron Workers Union, he started his own business, which was still active at the time of his arrest. Brima is a father of four children (one girl and three boys). He is a very good and loving father and very involve with his kids lives.  I can go on and on as his mother. I hope your Honor that you give Brima the opportunity to come home and continue his work in the neighborhood.

Sincerely
Marilyn Wurie

16

EXHIBIT D

Exhibit Nineteen



From: Jeannette Davis tiledbynette@gmail.com
Subject: Re Brima Wurie
Date: August 31, 2023 at 8:02 PM
To: jmiller@millercriminaldefense.com

Jeannette Davis
1209 Heights at Cape Ann
Gloucester Ma 01930

August 24,2023

To The Honorable Peter Krupp,

My name is Jeannette Davis, I am a 15 year member of Local 3 Bricklayers and Allied Craftsmen of Boston, Ma. I am a journeyman and the only female tile setter in the Local and recently completed a blueprint reading/ foreman training. I have been building my own residential tile business for the past 4 years. I am also a single mother to an almost 13 year old girl.

I have known Brima for 4 years and in that time his friendship has greatly and positively affected my life. We met in the neighborhood he lives in, my sister lives across the street from him. He is not only a pillar in his family, but in his community as well. Many times I would go visit my sister and her children and observed Brima mowing his parents lawn or putting out the trash. He takes a lot of pride in the presentation of his home. I have seen him throwing a football around with young kids that also live on the street, he helps his neighbors carry groceries into their homes, I've even seen him carry someones Christmas tree up to the third floor for them. Just as much as he is caring and kind he is hard working. The amount of work and dedication I saw him pour into his maintenance company is inspiring to say the least. His drive and attitude toward success has had a profound effect on me to become a better version of myself. He has coached and guided me to my own path of success. It is because of him that I have been confident enough to successfully build a strong book of clientele and have begun to have a prosperous tile business. . He has pushed me to become a better person and completely change the structure of my life. His knowledge in fitness influenced me to consistently work out with my daughter, and to cook and eat better meals. I have become a better mother as he reminds me it is important to have a balanced schedule, it is ok to be a working mom but to never forget I am a mom who works.

Brima is an amazing father, a kind hearted son, a compassionate brother and an admiral friend whose presence is greatly missed. I talk to him frequently and know that he is yearning to get back to being an active father and an attentive and steadfast son. He is ready to get back to working even more diligently than he was before.

Thank you for taking the time to read this.
Sincerely, Jeannette Davis

Attachment.png

17

# EXHIBIT D

*Exhibit Twenty*

To The Honorable Peter Krupp,

My name is Kenyon Davis. I'm a Lab Cluster Coordinator of the Special Ed Dept. at a grade K-8 school for the Boston Public Schools, and a longtime family friend of the Wurie family. I'm writing this letter for my friend Brian Wurie. I've seen major changes in his life throughout the years, from childhood to our transition into adulthood.

We've been friends since grade school, and over the years played youth league sports (football/basketball etc). His adult years have had some tough breaks. I know that it took some time for all of us to grow. I've seen many of my peers grow as we strive for success, wealth, good health, and family prosperity. I'm glad to see Brima working, chasing some of his dreams, and aligning with friends who have had (and will continue to have) a positive influence in his life. I work with some behaviorally challenged youth. I was proud of a Brima stating a business as a certified fitness trainer. Brima and I had been talking about him volunteering on Saturdays to assist with a program to train troubled teens.

I pray that Brima can continue the good works that he's set forth and persevere through obstacles that remain before him. I join the family in asking for leniency in his sentencing. I will always be here as a friend and support him and the family to achieve these goals.

If you have any questions, or I can be of any help at all, please dont hesitate to call me. I can be reached at (857) 251-9626.

Thank you

Kenyon Davis M.Ed, CAGS

**EXHIBIT D**

To: Honorable Peter Krupp
Re: Brima Wurie

*Exhibit Twenty-one*

Good morning,

My name is Charles Israel. I currently work as a Program Manager IV in an audit and investigations division of a Human Services agency for the Commonwealth of Massachusetts. I'm writing this letter on behalf of and in support of Brima Wurie. Brima and I have been friends since we were kids attending grade school together in Reading Ma., through the METCO program (bussing inner city kids to schools in the suburbs). We played sports together and our families/siblings are also connected. Throughout life we've maintained a friendship that we refer to as brotherhood of over 30 years!

I possess over 20 years of combined experience in the human services field in a variety of roles. I've managed state and vendor programs for the Dept. of Youth Services, Dept. of Developmental Services, as well as the Dept. of Mental Health. For most of this time (approximately 15 years) I've worked directly with inner-city youth/connecting youth (aging out of DYS commitment/youthful offenders ages 18-24) and families to any/all needed services for successful life outcomes, through my employment as well as a Mentorship program that I started. My passion for this work was derived from personal life experiences as well as current deficits in our community. It is my belief that troubled young men are more responsive to men who've had similar challenges in life to mentor them and to role model. I know that my work over the years has help changed lives, but more importantly I know that we've saved lives.

I was both proud and happy for Brima becoming a fitness instructor band becoming a business owner. He would stress the importance of eating healthy and working out as a means for balance in life. Two of my eldest sons are now young adults (18, and 23). Brima talked to them and encouraged them to begin a consistent workout routine, and also talked to them and a few of their friends about making healthy choices in all aspects of life. I watched these young men, listening to advice from someone who could provide examples of life's hardships that come from choosing the wrong path, as they gave their commitment to "stay on track" to being "good kids" I was thankful for this conversation providing the necessary reinforcement in these young men's lives! In recent years, Brima has shown and proven to be a man focused on "putting the pieces (of life) back together".

As a friend who calls Brima my brother, I'm committed to walk beside him and support in any way possible to ensure that he has the necessary tools to stay productive and be the success story that he's destined to be. I stand with the family asking for leniency with sentencing, hoping that he has an opportunity to impact more lives of young people in the community on his journey.

Thank you for your time.

Respectfully,

Charles Israel II M.Ed LSW

**19**